GENERAL QUINCE *vs.* STATE OF RHODE ISLAND.
TITUS WARD *vs.* STATE OF RHODE ISLAND.

APRIL 2, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

Condon, C. J. These are privileged actions against the state for damages. They were specially authorized by House Resolutions Nos. 1418 and 1486. See Rhode Island Acts and Resolves, January Session 1960, pp. 1221, 1226. The actions and the resolutions are identical. The cases were therefore tried together before a justice of the superior court and resulted in a decision for each plaintiff in the sum of $2,500. All the parties excepted thereto and have brought the cases here by their bills of exceptions. Since the actions and the facts upon which they are based are identical, we shall hereinafter discuss the questions raised by such exceptions as though only one case were here, but our decision will apply to both.

The plaintiff argues that the damages are grossly inadequate in that they fail to compensate him fully for the indignities to which he was subjected by the state. On the other hand defendant contends that such alleged indignities were incidental to lawful procedure on its part and therefore were not compensable at all. For this reason it urges that the damages are grossly excessive to the extent that the trial justice awarded compensation for the alleged indignities.

The plaintiff, a migrant farm laborer, happened to witness a homicide on which the state brought a criminal prosecution. It took plaintiff into custody as a material witness and upon his failure to furnish bail had him committed by the district court of the third judicial district to the adult correctional institutions. Thereafter on his petition for habeas corups we found that he had been illegally

committed and ordered his discharge. See *Quince* v. *Langlois*, 88 R. I. 438.

The record discloses that at his apprehension he was handcuffed, fingerprinted and photographed and thereafter confined with convicted criminals, compelled to take his meals with them and to wear prison garb. His unlawful imprisonment with these accompanying indignities and humiliations lasted for 158 days. For about three months during that period he was denied access to persons outside the adult correctional institutions. When finally he was accorded an opportunity for such access he filed the petition for habeas corpus in this court.

The trial justice found that as a result of such unlawful commitment plaintiff actually lost $1,250. He then considered the humiliating circumstances attendant upon plaintiff's confinement in the adult correctional institutions and the consequent deprivation of his right of personal liberty. It would appear from his decision that he did not deem the humiliating circumstances of serious concern as an element of damage and rested his finding almost solely on plaintiff's loss of liberty which he evaluated also in the amount of $1,250. The plaintiff strenuously argues that this is a gross underevaluation of the right of personal liberty and submits that to be reasonable in the circumstances it should be $10,000. He asks this court to award him an additur commensurate with the true value of his loss.

At the oral argument a question was posed from the bench as to whether the resolution authorizing the superior court to try and determine plaintiff's claim was intended to provide for review in this court of the trial justice's decision and if so did it include authority to grant an additur. At our suggestion supplementary briefs on this question have been filed but they have not resolved the problem. However, we have resolved it in the affirmative, although not without some misgiving.

While the legislative resolution designates only the superior court as the forum to try and determine plaintiff's claim against the state, we think the legislature intended to afford as ample an opportunity for the claimant to receive an ultimate judicial determination on the law and the facts as is afforded in any action at law commenced as of right in the superior court. We think support for such view may be found in the absence from the resolution of a limitation of the amount of damages that may be awarded.

The resolution is an act of grace voluntarily giving legal sanction to an otherwise unenforceable moral obligation. In such legislation it is customary for the legislature to fix an arbitrary limit on the damages. Our general assembly, however, was apparently content in the present instance to leave the amount of damages to untrammeled judicial determination. We attribute such action to their assumption that if either party felt it necessary in the interest of justice to the state or the plaintiff, the superior court's decision could be reviewed in this court. Hence we decide that each party's bill of exceptions is properly here for our determination to the full extent of such procedure.

In support of its exception defendant contends that it detained plaintiff strictly in accordance with law and therefore the trial justice erred in awarding damages for loss of liberty or for humiliation and indignity suffered by plaintiff as incidents of such detention. There is no merit in that contention. The unlawfulness of plaintiff's commitment is res judicata. *Quince* v. *Langlois, supra.* Moreover, by the very terms of its resolution the general assembly has accepted that decision as the basis for according to plaintiff the privilege of suing the state for damages for such unlawful commitment.

In our opinion the language of the resolution does not reasonably submit to defendant's interpretation that in

the circumstances only nominal damages should be awarded for loss of liberty occasioned by its detention of plaintiff. Nor do we agree with its contention that since it did not charge plaintiff with a crime his mere detention did not result in any humiliation, indignity or shame warranting an award of damages. On the contrary, we are clearly of the opinion that the trial justice was warranted on the evidence before him in awarding substantial damages and that the amount awarded was not grossly excessive. The defendant's exception is accordingly overruled.

The plaintiff's exception presents a more troublesome question. He contends that the damages are grossly inadequate not only because a serious breach of his right of personal liberty was involved, but also because of the flagrant abuse of his personal dignity and integrity. There is merit in that contention. We are disposed to take a harsher view of the wrong done plaintiff both in the deprivation of his liberty and the humiliating and degrading circumstances of his detention among convicted criminals than the trial justice apparently did.

We have heretofore observed that an exception to a trial justice's decision on damages presents a somewhat different problem than an exception to his decision on liability. *Cartier* v. *Liberty Laundry, Inc.*, 49 R. I. 12. Although we regard such a decision of persuasive force and not to be disturbed save after mature consideration, it is different from one on liability. The fixing of the amount of damages either by a court or jury calls for the exercise of good judgment, application of experience in the affairs of life, and knowledge of social and economic conditions. In the *Cartier* case this court applied its own judgment and experience and doubled the amount of damages previously fixed by the trial justice as the condition of a remittitur. Relying upon the same formula in the case at bar, our judgment and experience teach us that $1,250 is far from

adequate compensation for the grievous wrongs suffered by plaintiff at the hands of the state's servants.

Liberty is precious beyond compare. Indeed it was once eloquently proclaimed at a critical moment of our country's history that life itself would be too dear if purchased at the price of chains and slavery. To the innocent even a momentary deprivation of liberty is intolerable; 158 days is an outrage. Confinement of the plaintiff for so long a period among criminals and forcing him to wear prison garb added the grossest insult to injury. Such maltreatment cannot be fully compensated for by pecuniary damages. However, the general assembly has recognized the justice of at least a token satisfaction. More than that the plaintiff cannot claim since he sues not by right but by grace. Nevertheless, we think such token satisfaction should be far more substantial than $1,250. After careful consideration of the evidence and bearing in mind the privileged nature of the plaintiff's cause of action we are of the opinion that $2,500 would more nearly approximate fair and reasonable compensation.

In each case the plaintiff's exceptions are sustained and the defendant's exception is overruled. On April 11, 1962 the defendant may appear in this court to show cause, if any it has, why each case should not be remitted to the superior court with direction to enter judgment for the plaintiff in the sum of $3,750.

*Goodman, Semonoff, Gorin & Blease, Ralph P. Semonoff; Abedon, Michaelson and Stanzler, Milton Stanzler, Richard A. Skolnik,* for plaintiffs.

*J. Joseph Nugent,* Attorney General, *John R. Cosentino,* Special Counsel for State.