210 A.2d 146.

WILLIAM J. MARKHAM *vs.* STATE.

DOROTHY MARKHAM *vs.* STATE.

MAY 19, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

PAOLINO, J. These two actions of the case were brought against the state pursuant to a special act passed by the General Assembly at the January session, 1964, and approved by the Governor, May 5, 1964. The cases are here on the exception of the plaintiff in each case to the decision of the superior court. The only issue before us is whether the superior court erred in deciding that one Erwin John Bowers was not an agent of the state within the contemplation of sec. 3 of the act.

Mr. Erwin J. Bowers operated the bridle trail concession at Goddard Memorial State Park under a contract with the state wherein he agreed to pay the state the sum of $751 per year for five years, from May 1, 1960 to April 30, 1964

inclusive. The contract includes certain terms and conditions, a copy of which we have appended to this opinion for a clearer understanding of the issue in this action.

The plaintiffs are husband and wife. On August 19, 1962 Mrs. Dorothy Markham was injured when she was thrown from a horse rented from the riding concession operated by Mr. Bowers. As a result of such accident Mrs. Markham and her husband brought two separate actions of trespass on the case for negligence against Mr. Bowers wherein she sought recovery for her injuries and Mr. Markham sought recovery for consequential damages. They based those actions on the ground that Mr. Bowers was negligent in failing to furnish safe horses and proper attendants for inexperienced riders. Those cases were consolidated for purposes of trial and after a hearing before a justice of the superior court sitting without a jury, a judgment was entered in each case for plaintiff. Executions were issued but were returned "Wholly unsatisfied, there being no real or personal estate of said defendant upon which to levy."

Thereafter the special act authorizing the instant actions was enacted. The act permits plaintiffs to sue the state and provides that the trial be held in the superior court in Providence county without a jury. Sections 3 and 4 further restrict the jurisdiction of the superior court as follows:

> "Sec. 3. The only issue the Court shall determine at said trial is whether, on August 19, 1962, said E. John Bowers was operating said Goddard Park Riding Academy as an agent of the State of Rhode Island so that if no defense of sovereign immunity were available, which immunity the General Assembly hereby expressly waives, the State of Rhode Island would be liable in the same manner as if said contract had been entered into between said E. John Bowers and a private party.

> "Sec. 4. If the Court shall determine that said E. John Bowers was acting as agent for the State of Rhode Island in the manner described in Paragraph 3

of this act, the Court shall award to and render judgments against the State of Rhode Island for Dorothy Markham in the amount of Eighty-two hundred Seventy-three and 95/100 ($8273.95) Dollars and for William J. Markham in the amount of Eight Hundred Forty-one and 89/100 ($841.89) Dollars."

Pursuant to such act plaintiffs brought the instant actions. The declaration in each case has two counts. The first count alleges in substance that Bowers is the agent of the state by virtue of the state's authority under the contract to exercise control over the operation of the concession. The second count alleges that because the state held itself out to the public as the proprietor of Goddard Park and because it held out to the public that a riding academy was located within the park, it was the principal, and Bowers was the agent, in the operations of the riding academy, and therefore it owed plaintiffs a duty to provide a safe and careful supervision of the riding academy. In each case, defendants filed pleas of not guilty to each count.

The evidence presented at the trial consisted of the stipulated testimony of William H. Cotter, Jr., Chief of the Division of Parks and Recreation of the State of Rhode Island, the oral testimony of William R. Halpin, superintendent of Goddard Park, the testimony of plaintiffs and Mr. Bowers, and certain exhibits. The exhibits consisted of a certified copy of the special act authorizing these actions, a copy of the contract between Bowers and the state, a letter from Mr. Cotter to the park superintendent relating to Bowers' operation of the concession, photographs showing signs posted by the state at the entrance to Goddard Park and to the riding academy, and a report directed to Mr. Cotter relating to the accident. The plaintiffs' exhibit 3 is a copy of a regulation imposed in 1961 following an accident.

The following undisputed facts appear in the record. The state owns Goddard Park, where certain activities were operated directly by the state through state employees and

certain other activities, such as the riding stable, were operated by concession. The stables are owned by the state and all bridle trails are on state property. The stables were operated in 1962 by Bowers pursuant to the contract awarded him in 1960.

Mr. Cotter testified as to the intent of certain of these provisions. He also testified that prior to 1962 he authorized Bowers to operate the concession without insurance, "notwithstanding his prior knowledge of Mr. Bowers' impecunious condition"; that he initiated a requirement following a riding accident in 1961 that Bowers maintain a logbook with the names and addresses of riders; that he required accident reports to be submitted; that the state took action to increase the maximum charge; that because of Bowers' financial condition, the state had made repairs called for in the stable and the state had erected at its own expense signs at the entrance of the park listing "Riding Academy" in the same grouping, type and appearance with other activities operated directly by the state; and that he personally checked the premises.

Mr. Halpin testified that he checked the stables, their cleanliness and the safety requirements and employees daily; that a check was maintained to see that horses remained on the bridle trails; that riders had been directed to dismount and their horses returned to the stable when they had not stayed on the trails; that he had in fact given to Bowers' employees in particular instances and Mr. Cotter had given orders to Bowers himself; and that insofar as the state was concerned, it adopted "equal effort and equal thought and equal investigation" to all activities in the park, whether the activity was operated by the state or by a concessionaire.

The testimony of plaintiffs was in substance that they had previously attended the park and participated in activities operated by the state; that they had believed from seeing the signs that the riding academy was operated by

the state; and that there were no signs or other outward indication that the riding academy was run differently from any other activity at the park.

Mr. Bowers was called as a witness by the state. He testified that he had operated the riding academy at Goddard Park for many years; that he bought his own horses and equipment and paid his own help; and that his operation of the stables without insurance was only by permission of Mr. Cotter. He admitted that the fixing of rates, the requirement of an attendant for inexperienced riders and the maintaining of a log were all requirements set by the state.

After reviewing the evidence and the law applicable thereto the superior court entered a decision finding no agency between Mr. Bowers and the state so as to make the state liable in the same manner as if the contract between it and Bowers had been entered into between Bowers and a private party.

The plaintiffs contend that the superior court's findings are against the evidence and that its decision is against the law. In considering these appeals, we shall treat the state, as we must under the special act, as a private party, in determining whether the superior court erred in deciding that on August 19, 1962, Mr. Bowers was not operating the riding academy as an agent of the state.

We point out here that under sec. 3 of the act the only issue before the superior court was "whether, on August 19, 1962, said E. John Bowers was operating said Goddard Park Riding Academy as an agent of the State of Rhode Island * * *." The question of agency was then, and is now, the only issue to be determined under sec. 3. It is well settled that a private act passed for the benefit of an individual is construed strictly against him. *Brown University* v. *Granger,* 19 R. I. 704. We cannot enlarge upon the jurisdiction granted in sec. 3.

. Viewed in this light we hold that the superior court did not err in deciding that there was no agency relationship between Mr. Bowers and the state. We agree with the findings of the superior court that Bowers was an independent contractor and that the evidence does not show such control or supervision by the state as to create an agency relationship. While it is true that under the terms and conditions of the contract between Bowers and the state, the state included certain rules and regulations relating to the operation of the concession by Mr. Bowers, it does not follow that a master-servant or employer-employee relationship was established. On the contrary, by its very terms, the contract establishes an independent contractor relationship.

In addition the evidence relating to the operation of the concession supports the finding that this was an independent contractor relationship. The superior court notes in its decision that Bowers provided his own horses without any control by the state; that he provided his own equipment for his horses; that he provided feed and handled the horses with respect to feeding, watering, and other care; that he exercised them as he pleased; and that his wife assisted him and he employed a young man in the operation.

The superior court noted that this was a business wherein Bowers was paid nothing by the state for his services; that he paid the state for the right to use the facilities of the park in his business; that his wife was not on the state payroll and that his assistant was paid by Bowers and not by the state. It also appears from the record that all the income from this operation went to Bowers for his own use; that within the limits of the contract he could set the charges for the use of his horses; and that he could regulate the number of employees, the amount paid to each, and other incidents of employment.

This evidence clearly establishes Mr. Bowers as an independent contractor. As the court said in *O'Connor* v. *Narragansett Electric Co.*, 54 R. I. 317, 321: "An independent

contractor in the ordinary acceptation of the meaning of the term is one who undertakes the construction or performance of some unit or branch of a larger work, the hiring of labor, furnishing of materials and tools and all that goes into the term 'contractor' as contrasted with that of mere 'workmen' or 'employee.' "

In view of the restricted jurisdiction imposed by sec. 3 of the act, the cases and authorities cited by the plaintiffs under point I of their brief are not in point. For the same reason the issues briefed and argued by the plaintiffs under point II are not pertinent.

The plaintiff's exception in each case is overruled, the decision of the superior court is affirmed in each case, and the cases are remitted to the superior court for entry of judgment for the state in each case.

## APPENDIX

"Terms and Conditions for Operation of Bridle Trail Concession At Goddard Memorial State Park

"1.   The area to be used for riding horses shall be confined to the following boundaries: the area between the main drive and the shore of Greenwich Bay and Cove, and between Clammers Road and the westerly boundary of the park. These restrictions will confine all riding to the trails within the woodland section of the park as specified above. Horses may be taken outside the park limits, or be brought into the park riding trails, only by the shortest route between the Concessionaire's stable and Ives Road.

"2.   The concession includes the use of the riding stable and pony barn, and corral. These buildings are to be used only for the purpose of a stable for riding horses, and no part of said concession shall be used for any other purpose.

"3.   The Concessionaire may erect a suitable sign indicating the location of his concession, and may advertise his concession in the public press.

"4. The maximum charge for riding horses shall not exceed $2.00 per hour. All inexperienced riders shall be accompanied by an attendant while such riders are using the park trails.

"5. The Division of Parks and Recreation reserves the right to remove any employee of the Concessionaire whose conduct is not satisfactory, and to terminate this concession at any time if, in the judgment of the Chief of the Division of Parks and Recreation, its terms have been violated.

"6. No part of this concession may be sublet without first obtaining the written permission of the Chief of the Division of Parks and Recreation.

"7. The Concessionaire shall save the State harmless from, or on account of, any loss, cost, injury or damage by reason of any liability, or claim of liability for injury to person, or damage to property, arising out of his operation of this Concession. The Concessionaire shall carry liability insurance to cover body injury and personal property damage.

"8. *The concession and all buildings must be kept clean at all times* and all local ordinances or State laws governing such a concession must be strictly adhered to by the Concessionaire.

"9. The Division of Parks and Recreation reserves the right to make any other rules and regulations pertaining to the concession and to the Concessionaire which are in the best interests of the State and the general public.

"10. The operation of the concession may be terminated by the Chief of the Division of Parks and Recreation when the terms or spirit of these regulations have been broken."

*Temkin, Merolla & Zurier, Melvin L. Zurier,* for plaintiffs.

*J. Joseph Nugent,* Attorney General, *Joseph L. Breen,* Chief Special Counsel, for State.