Marcia J. LAIRD

v.

CHRYSLER CORP. et al.

v.

STATE of Rhode Island.

No. 82–113–Appeal.

Supreme Court of Rhode Island.

May 12, 1983.

Joseph A. Kelly, Providence, Peter M. Durney, Boston, Mass., for plaintiff.

Dennis J. Roberts II, Atty. Gen., Richard B. Woolley, Sp. Asst. Atty. Gen., for defendant.

## OPINION

MURRAY, Justice.

The United States District Court for the District of Massachusetts has certified four questions of law to this court, pursuant to Rule 6 of the Supreme Court Rules. The relevant facts provided by the District Court are as follows. The plaintiff, Marcia Laird, a Rhode Island resident, filed a complaint in the United States District Court for the District of Massachusetts seeking damages for injuries sustained in an automobile accident. The accident occurred in Pawtucket, Rhode Island, on November 21, 1978. The plaintiff was driving her 1973 Dodge automobile on Route 95 when her car collided with a tractor-trailer truck owned by Bird & Sons, Inc., a Massachusetts corporation. In her complaint, the plaintiff alleged that Bird & Sons, Inc., Chrysler Corporation, and the State of Rhode Island were jointly liable for damages resulting from the collision.[1]

The plaintiff voluntarily dismissed her action against the State of Rhode Island. Thereafter Chrysler Corporation filed a third-party complaint asserting negligence on the part of the state in maintaining Route 95 and claiming indemnification and/or contribution from the State of Rhode Island in the event that plaintiff obtained a judgment against Chrysler. The state moved to dismiss the third-party complaint on the grounds that the Eleventh Amendment bars such a suit against the state in federal court. Prior to ruling on the state's motion to dismiss, the federal court certified the following questions to this court:

1. The complaint alleges that Bird & Sons, Inc. is liable because the driver of the truck negligently caused the collision, that Chrysler Corporation is liable because of the defective and negligent manufacture, design, and installation of the windows in the 1973 Dodge that plaintiff was driving, and that the State of Rhode Island is liable because of its negligent failure to maintain the highway on which the collision occurred.

"1. Whether the waiver of sovereign immunity by the State of Rhode Island in its General Laws, Section 9–31–1 constitutes a waiver of its right not to be sued by reason of the [Eleventh] Amendment to the United States Constitution?

"2. Whether the waiver of sovereign immunity with respect to tort claims, as found in Rhode Island General Laws, Section 9–31–1 applies to tort actions brought in a federal court?

"3. Whether (assuming that the State of Rhode Island has waived its immunity and its rights under the [Eleventh] Amendment to the United States Constitution) by virtue of the adoption of General Laws, Section 9–31–1, the State of Rhode Island has consented to be sued as a joint tortfeasor?

"4. Whether (assuming that the State of Rhode Island has waived its rights to the extent that it may be sued in tort in a federal court) that waiver constitutes a waiver of immunity to claims for contribution and/or indemnity?"

General Laws 1956 (1969 Reenactment) § 9–31–1, as enacted by P.L.1970, ch. 181, § 2 provides:

"The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in § 9–1–25, hereby be liable in all actions of tort in the same manner as a private individual or corporation, provided however, that any recovery in any such action shall not exceed the monetary limitations thereof set forth in the chapter."

It is clear that by enacting the State Tort Claims Act, so-called, G.L.1956 (1969 Reenactment) §§ 9–31–1 through 9–31–7, as enacted by P.L.1970, ch. 181, § 2, the Legislature meant to waive a major portion of the state's common-law sovereign immunity, subject to the express limitations contained in the statute as well as implied limitations imposed by this court. *See Andrade v. State,* R.I., 448 A.2d 1293 (1982); *Calhoun v. City of Providence,* 120 R.I. 619, 390 A.2d 350 (1978). The statute clearly waives the state's immunity from tort actions in Rhode Island courts. However, it is a question of first impression before this court whether the Legislature also intended to waive the state's Eleventh Amendment immunity from suit in federal court.[2]

■ The Eleventh Amendment to the United States Constitution provides:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."[3]

There is no question that a state may waive its Eleventh Amendment immunity and consent to be sued in federal court. *Parden v. Terminal Railway,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). However, the relinquishment of Eleventh Amendment rights, like the waiver of any constitutional

---

2. Several federal court decisions have held or suggested that the Legislature intended such an Eleventh Amendment waiver by enacting G.L. 1956 (1969 Reenactment) § 9–31–1, as enacted by P.L.1970, ch. 181, § 2. *See Marrapese v. State of Rhode Island,* 500 F.Supp. 1207, 1222 (D.R.I.1980); *Naughton v. Bevilacqua,* 458 F.Supp. 610, 618 (D.R.I.1978), *aff'd,* 605 F.2d 586 (1st Cir.1979); *Bowen v. Evanuk,* 423 F.Supp. 1341, 1342–43 (D.R.I.1976); *Laird v. Chrysler Corp.,* 92 F.R.D. 473, 474 (D.Mass. 1981).

3. The Eleventh Amendment was adopted by Congress as a response to the assumption of original jurisdiction by the United States Supreme Court in a suit brought against the State of Georgia. *Chisholm v. Georgia,* 2 U.S. 419, 2 Dall. 419, 1 L.Ed. 440 (1793). There, the Court relied upon the language in Article III extending the judicial power to controversies between a state and citizens of another state in finding that it had jurisdiction over the action. In the words of Mr. Justice Powell, "The decision is said to have created a shock throughout the country." *Patsy v. Board of Regents of Florida,* —— U.S. ——, ——, 102 S.Ct. 2557, 2573, 73 L.Ed.2d 172, 194 (1982) (Powell, J., dissenting). Unlike the other rigid limitations on federal jurisdiction, the limitation imposed by the Eleventh Amendment may be waived by express consent of the state. *Id.* at ——, 102 S.Ct. at 2574 n. 13, 73 L.Ed.2d at 185 n. 13.

right, is not lightly to be inferred. *See Petty v. Tennessee-Missouri Bridge Commission,* 359 U.S. 275, 276, 79 S.Ct. 785, 787, 3 L.Ed.2d 804, 807 (1959). `The fact that a state has relinquished its sovereign immunity in its own courts is not determinative of whether it has waived its Eleventh Amendment immunity from suit in federal courts. *Edelman v. Jordan,* 415 U.S. 651, 677 n. 19, 94 S.Ct. 1347, 1363 n. 19, 39 L.Ed.2d 662, 681 n. 19 (1974).

█ In *Edelman v. Jordan,* the United States Supreme Court articulated a stringent standard for determining whether a state has waived its Eleventh Amendment immunity:

> "[W]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Id.* 415 U.S. at 673, 94 S.Ct. at 1361, 39 L.Ed.2d at 678 (quoting *Murray v. Wilson Distilling Company,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742, 751 (1909)).

*See Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132, 136 (1981) (per curiam). While this is a strict standard,[4] we think that, looking to the language of the statute and the facts and circumstances surrounding its enactment— and its subsequent construction by this court and the Federal District Court in Rhode Island—it is clear that the General Assembly intended to waive the state's Eleventh Amendment immunity.

Since there is no recorded legislative history in Rhode Island from which to ascertain legislative intent, we first must look to the circumstances leading to the enactment of § 9–31–1 and then to the language of the statute itself. Prior to 1970, this state adhered strictly to the doctrine of sovereign immunity. *See Markham v. State,* 99 R.I. 650, 210 A.2d 146 (1965); *Quince v. State,* 94 R.I. 200, 179 A.2d 485 (1962). A plaintiff had to obtain special enabling legislation from the General Assembly in order to sue the state or a local government unit. Such private bills gave the state's consent to suit subject to various restrictions. A bill might set an arbitrary limit on the possible damage award, specify which state court could hear the suit, limit the trial to a nonjury trial and restrict the court's jurisdiction with regard to what issues it may decide. *See Markham v. State,* 99 R.I. at 651–52, 210 A.2d at 147; *Quince v. State,* 94 R.I. at 202–03, 179 A.2d at 486–87.

In 1970, this court abolished municipal immunity in *Becker v. Beaudoin,* 106 R.I. 562, 261 A.2d 896 (1970). At the same time we suggested that the General Assembly enact legislation regulating and limiting the prosecution of claims against cities and towns. *Id.* at 571, 261 A.2d at 901. We explicitly limited the scope of our ruling in *Becker,* stating, "[i]t is to be understood that this decision does not in any manner abolish or limit the sovereign immunity that inheres in the state itself." *Id.* at 572, 261 A.2d at 901–02.

In response to *Becker v. Beaudoin,* the General Assembly enacted P.L.1970, ch. 181, § 2, later codified as G.L.1956 (1969 Reenactment) §§ 9–31–1 through 9–31–7, which dealt with governmental immunities. The Legislature went beyond *Becker,* however, and adopted sweeping language abrogating the sovereign immunity of the state as well as all other political subdivisions in Rhode Island. Section 9–31–1 subjects the state and its political subdivisions to liability in all actions of tort "in the same manner as a private individual or corporation." The only limitation contained in the statute itself is a $50,000 ceiling on damages recover-

---

4. This standard is essentially the same one that this court has applied when construing a waiver-of-immunity statute for purposes of state— rather than federal constitutional—law. In *Andrade v. State,* R.I., 448 A.2d 1293 (1982), this court stated: "In construing a waiver of immunity statute, it is presumed that the Legislature did not intend to deprive the state of any part of its sovereign power unless the intent to do so is clearly expressed or arises by necessary implication from the statutory language." *Id.,* 448 A.2d at 1295.

able from the state and its political subdivisions. Section 9–31–2.

In contrast to its prior practice in enacting private legislation for plaintiffs, the Legislature placed few conditions on the state's consent to suit. This statute contains no restrictions on venue and no procedural directions. It does not require a nonjury trial in actions against the state, nor does it limit the issues that may be considered by the court. Under this statute, the only difference between the State of Rhode Island and other tort defendants is the limitation on liability contained in § 9–31–2.

Section 9–31–1 is, on its face, a blanket waiver of sovereign immunity. Nothing in its language restricts a suit against the state to Rhode Island state courts. And there is nothing in the statutory context that points to such a restriction.[5] As the Federal District Court in Rhode Island has stated: "[T]he Rhode Island Tort Claims Act is remarkable both for its substantive breadth and its procedural simplicity. While other states were clinging fast to their tort immunity, or giving a consent to suit that was hedged with exceptions and conditions, Rhode Island enacted legislation that was straightforward, uncomplicated and unreserved." *Marrapese v. State of Rhode Island*, 500 F.Supp. at 1221–22.[6]

We think the unrestricted clarity of the statutory language and the context in which this statute was enacted overwhelmingly imply that the Legislature intended to waive its Eleventh Amendment immunity to suit in federal court. This conclusion is further supported both by the cases in this court and the Federal District Court in Rhode Island, which have construed this statute since it was enacted, and the silence

of the General Assembly since 1970 on the subject of governmental immunity.

This court has interpreted §§ 9–31–1 through 9–31–7 four times since the statute's enactment in 1970. *Andrade v. State*, R.I., 448 A.2d 1293 (1982); *Ryan v. State Department of Transportation*, R.I., 420 A.2d 841 (1980); *Calhoun v. City of Providence*, 120 R.I. 619, 390 A.2d 350 (1978); *S.S. Kresge Co. v. Bouchard*, 111 R.I. 685, 306 A.2d 179 (1973). We have held that § 9–31–1 does not encompass actions against the tax assessor for overassessment of taxes. *S.S. Kresge Co.*, 111 R.I. at 688–89, 306 A.2d at 181. We have also held that in order to have an actionable claim against the state, just as with a private defendant, a plaintiff must show that there was a breach of a duty owed to him or her in an individual capacity and not merely a breach of some obligation owed to the general public. *Ryan*, R.I., 420 A.2d at 843.

■ We have placed only two limitations on the breadth of the State Tort Claims Act. In *Calhoun v. City of Providence*, 120 R.I. at 631–32, 390 A.2d at 356, we held that § 9–31–1 did not abolish the personal immunity of certain government officials, specifically judges and prosecutors. These officials are deemed immune from suit for the benefit of the public in whose interest it is that they remain free to perform their functions without fear of consequences. Therefore, a plaintiff could not sue the state for the tortious acts of its employees if they were personally immune from suit. *Id.* at 632, 390 A.2d at 357. And most recently in *Andrade v. State*, R.I., 448 A.2d at 1295, we declined to incorporate the prejudgment-interest statute into the State Tort Claims Act and held that the $50,000

---

**5.** As the court points out in *Marrapese v. State of Rhode Island*, 500 F.Supp. 1207 (D.R.I.1980), there are no Rhode Island statutes that expressly authorize federal-court suits. Therefore, this is not a case where an express waiver of Eleventh Amendment immunity by the Legislature in one area precludes finding an implied waiver in another. *Id.* at 1217. Furthermore, there appear to be no pertinent Rhode Island constitutional provisions for, and certainly no prohibitions against, a waiver of Eleventh Amendment immunity.

**6.** The court in *Marrapese* exhaustively compares various other states' waiver-of-sovereign-immunity statutes and concludes that Rhode Island's statute is significantly unrestrictive. *See Marrapese v. State of Rhode Island*, 500 F.Supp. at 1217–21.

limitation on liability provided by § 9–31–2 was an absolute ceiling on recovery from the state. However, none of the limitations or interpretations of this court provide venue or procedural restrictions that might prevent a plaintiff from bringing an action in federal court.

The United States District Court for the District of Rhode Island has held or stated at least four times since 1975 that § 9–31–1 manifests the intent of the General Assembly to waive the state's Eleventh Amendment immunity. *Marrapese v. State of Rhode Island,* 500 F.Supp. at 1222; *Naughton v. Bevilacqua,* 458 F.Supp. 610, 618 (D.R.I.1978) *aff'd,* 605 F.2d 586 (1st Cir. 1979); *Bowen v. Evanuk,* 423 F.Supp. 1341, 1342–43 (D.R.I.1976); *Laird v. Chrysler Corporation,* 92 F.R.D. 473, 474 (D.Mass. 1981).[7] The General Assembly has had ample opportunity to express its disapproval of this conclusion by amending § 9–31–1. Its silence in the face of these decisions suggests that the Legislature has acquiesced in the finding that there is an Eleventh Amendment waiver implicit in § 9–31–1. *See Marrapese v. State of Rhode Island,* 500 F.Supp. at 1222; *Santanelli v. City of Providence,* 105 R.I. 208, 212, 250 A.2d 849, 851 (1969).

Accordingly, we find that the broad language of § 9–31–1, which unambiguously and without restriction holds the state "liable in all actions of tort in the same manner as a private individual or corporation [except for a limitation of damages] * * *" manifests, by "overwhelming implication," a legislative intent to place the state in the same position as any other private litigant and thus amenable to suit in either state or federal court. We find that this same language manifests the state's consent to liability as a joint tortfeasor and for contribution and/or indemnity "in the same manner as a private individual or corporation," subject to the $50,000 ceiling on recovery provided by § 9–31–2.[8] *See Laird v. Chrysler Corp.,* 92 F.R.D. 473 (D.Mass.1981) and *Bowen v. Evanuk,* 423 F.Supp. 1341 (D.R.I.1976).

We think the context within which this legislation was enacted and the subsequent silence of the Legislature bolster these conclusions. Furthermore, we believe that this ruling is in the best interest of judicial economy and expediency. We therefore answer all four questions certified by the United States District Court for the District of Massachusetts in the affirmative.

---

7. There is also an unpublished opinion so holding. *Bowen v. Evanuk,* Civil Action No. 5009 (D.R.I. July 11, 1975).

8. General Laws 1956 (1969 Reenactment) § 10–6–2, as amended by P.L.1970, ch. 313, § 1 provides as follows:
   "For the purposes of this chapter the term 'joint tort-feasors' means two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them; provided, however, that a master and servant or principal and agent shall be considered a single tortfeasor."
   Section 10–6–3, as amended by P.L.1977, ch. 197, § 1 provides:
   "The right of contribution exists among joint tortfeasors; provided however, when there is a disproportion of fault among joint tortfeasors, the relative degree of fault of the joint tortfeasors shall be considered in determining their pro rata shares."