Anthony DELLA GROTTA,
Plaintiff, Appellee,

v.

STATE OF RHODE ISLAND,
Defendant, Appellant.

No. 85–1214.

United States Court of Appeals,
First Circuit.

Argued Sept. 4, 1985.
Decided Jan. 17, 1986.

Elizabeth A. Del Padre, Sp. Asst. Atty. Gen., with whom Arlene Violet, Atty. Gen., was on brief for appellant.

Thomas C. Plunkett with whom Leonard A. Kiernan, Jr. was on brief for appellee.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and CEREZO,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

The State of Rhode Island appeals from a jury verdict in the United States District Court for the District of Rhode Island awarding plaintiff Anthony Della Grotta $14,000 against the State for alleged deprivation of his civil rights. We hold that the

* Of the District of Puerto Rico, sitting by designation.

State has waived its eleventh amendment immunity and is otherwise a suable "person" within 42 U.S.C. § 1983. Because there was lacking any evidence that any deprivation of Della Grotta's civil rights was caused by a "policy or custom" of the State, however, we also hold that the district court should have allowed the State's motion for a new trial.

## I. FACTS

On July 19, 1983, plaintiff Anthony Della Grotta, then 18 years old, went to Goddard Park in Warwick, Rhode Island, to go scuba diving. The park is owned by the State of Rhode Island, and is served by the Rhode Island Department of Environmental Management Park Police. On July 19, 1983, the supervising park police officer was Richard E. Coons, one of the defendants in the trial below.

When he arrived at Goddard Park, Della Grotta saw that Lisa Meddaugh, a former girlfriend, was working on a lemonade truck. Della Grotta boarded the truck, put his hand on Meddaugh's shoulder, and asked her for a date. Meddaugh asked him to leave, saying she was busy with customers. Della Grotta promptly stepped down off the truck and walked over to the beach to scuba dive.

Soon thereafter, Meddaugh noticed that $40 was missing from her cash box. She went to the park police office and filed a complaint with Officer Coons that suggested Della Grotta might have taken the money. On the basis of this complaint, Coons dispatched two officers to bring Della Grotta to the park police office for questioning. Della Grotta came peacefully. At the time he had in his possession only 11 cents, and a search of his car pursuant to his written consent failed to turn up the missing $40. Officer Coons testified at trial that on the basis of this evidence, as well as the fact that Della Grotta "was making sense" in his protestations that he was not involved in any theft, it was soon apparent that Della Grotta was not responsible for the

disappearance of the money. Nevertheless, Della Grotta was detained at the police station for several hours, and upon his release, was given a summons for disorderly conduct. Coons conceded at trial that, in fact, Della Grotta had not at any time acted in a manner that could reasonably be characterized as "disorderly."

On July 27, two days prior to Della Grotta's scheduled arraignment on the disorderly conduct charge, Meddaugh advised Officer Coons that she wished to withdraw her complaint against Della Grotta. Della Grotta was not informed about this action. Therefore, he went to court on July 29 expecting to face a disorderly conduct charge. Just before entering the courtroom, however, he was informed by Officer Coons that a charge of assault was being substituted for the disorderly conduct charge.

At the actual arraignment, Meddaugh appeared and formally withdrew her complaint, and all charges against Della Grotta were dismissed.

Based on the foregoing facts, Della Grotta brought an action against Officer Coons and the State of Rhode Island pursuant to 42 U.S.C. § 1983, alleging violation of his constitutional rights to be free from false arrest, false imprisonment, false charges, and illegal searches. The case was tried before a jury for two-and-a-half days. At the close of all the evidence, neither defendant moved for a directed verdict. The jury returned a verdict of $10,000 in compensatory damages and $2,000 in punitive damages against Officer Coons, and $14,000 in compensatory damages against the State of Rhode Island. Defendants' motions for judgment notwithstanding the verdict or for a new trial were denied. The State alone now appeals to this court.[1]

## II. WAIVER OF ELEVENTH AMENDMENT IMMUNITY

■ Rhode Island argues that the eleventh amendment prevents its being sued.

---

1. Officer Coons did not appeal from the judgment entered against him.

Although not raised below, this contention can be pursued here since the eleventh amendment is a jurisdictional bar to suits against states and may be raised on appeal for the first time. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974); *Ford Motor Company v. Department of Treasury,* 323 U.S. 459, 466–67, 65 S.Ct. 347, 351–52, 89 L.Ed. 389 (1945). *But see Atascadero State Hospital v. Scanlon,* 473 U.S. ——, ——, 105 S.Ct. 3142, 3150–52, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting).

The eleventh amendment would normally be an absolute defense for Rhode Island to this action. However, appellee insists that Rhode Island has waived its eleventh amendment immunity. Although the circumstances are peculiar, we agree.[2]

■ It is well settled that just as a state may waive its sovereign immunity to suit in its own courts, it may waive its eleventh amendment immunity to suit in the federal courts. *Atascadero,* 473 U.S. at ——, 105 S.Ct. at 3144–45; *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883).[3] A state's waiver of sovereign immunity in its own courts does not necessarily imply waiver of its eleventh amendment immunity, however. The Supreme Court emphasized in *Atascadero* that "in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court." Atascadero,* 473 U.S. at ——, 105 S.Ct. at 3147 (emphasis in original). *See also Edelman,* 415 U.S. at 673,

94 S.Ct. at 1360–61 ("In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' ").

Judged by the above standards, the Rhode Island statute on which Della Grotta relies for his waiver argument seems deficient. That statute, section 1 of R.I.Gen. Laws § 9–31–1 (1985), reads as follows:

The state of Rhode Island ... shall, subject to the period of limitations set forth in § 9–1–25, hereby be liable in all actions of tort in the same manner as a private individual or corporation, provided however, that any recovery in such action shall not exceed the monetary limitations set forth in the chapter.

This language does not refer to actions in federal court, hence failing to meet the strict standard of eleventh amendment waiver enunciated in *Atascadero* and *Edelman, supra. But see Marrapese v. Rhode Island,* 500 F.Supp. 1207 (D.R.I.1980) (finding waiver). This would be an end to the matter were it not for the fact that, in 1983, the Rhode Island Supreme Court ruled unequivocally, in response to questions certified by the federal district court in another case, that section 9–31–1 "manifests ... a legislative intent" to waive the State's eleventh amendment immunity to suit in federal court. *Laird v. Chrysler Corp.,* 460 A.2d 425 (R.I.1983). The *Laird* decision makes it necessary for us to decide whether, in spite of the Rhode Island statute's failure to spell out an intention to allow suit against the State in a *federal*

---

**2.** The eleventh amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." The Supreme Court has construed the amendment as barring suits against a state by its own citizens, even though the amendment does not explicitly so provide. *See Atascadero State Hospital v. Scanlon,* 473 U.S. ——, ——, 105 S.Ct. 3142, 3144–45, 87 L.Ed.2d 171 (1985); *Edelman*

*v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed.2d 842 (1890).

**3.** This is so despite the otherwise established principle that subject matter jurisdiction cannot be conferred by consent of the parties. *See, e.g., Mansfield, Coldwater & Lake Michigan Ry. v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884).

court, we should nonetheless defer to the Rhode Island Supreme Court and find a waiver. We believe the answer is "yes."

■■■■ The question of waiver is one of state legislative intent. *Cf. Palmer v. Ohio*, 248 U.S. 32, 34, 39 S.Ct. 16, 17, 63 L.Ed. 108 (1918); *Atascadero*, 473 U.S. at ——, n. 5, 105 S.Ct. at 3153 n. 5 (Brennan, J., dissenting). The Supreme Court's insistence that a state statute reflect on its face the state's intention to waive its constitutional immunity from federal suit is a reflection of the Court's solicitude for the state's interest: the Court insists that a waiver be found only where it is manifest that one was intended. But legislative intent is a matter of state law, on which the highest court of a state speaks with finality. *Mullaney v. Wilbur*, 421 U.S. 684, 690–91, 95 S.Ct. 1881, 1885–86, 44 L.Ed.2d 508 (1975).[4] Where the highest court of a state has construed a state statute as intending to waive the state's immunity to suit in federal court, the state's intent is just as clear as if the waiver were made explicit in the state statute.

It is true that the Supreme Court has frequently held that whether federal rights are waived is a federal question on which a state court determination does not bind a federal court. *See, e.g., Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977); *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 237 (1963). These cases, however, reflect the Court's concern that an individu-

al's purported waiver of his federal rights may be marked by "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242–43, 89 S.Ct. at 1711–12. A state legislature's waiver of the state's rights does not raise this concern. It would be inappropriate for a federal court, in reviewing a state legislative waiver of the eleventh amendment, to inquire into whether the legislators were acting in a voluntary and knowing manner. Similarly, when the highest state court declares the intent of its own legislature, the federal courts have no reason to exercise special oversight designed to save the state from its own or (if distinguishable) its judiciary's folly.

To be sure, the Supreme Court has insisted that waiver may not be inferred from a less than explicit statute. *Atascadero*, 473 U.S. at ——, 105 S.Ct. at 3146–47; *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360–61. But this rule, designed to protect a state from a federal court's ill-founded, possibly mistaken, view of what its state legislature really intended, could not have been meant to apply when the state's highest court has authoritatively declared the legislature's true intent.

■■■■ We thus hold that the determination by the Rhode Island Supreme Court in *Laird* that section 9–31–1 waives, and was intended to waive, the State's eleventh amendment immunity is dispositive of this issue. Della Grotta is not barred by the eleventh amendment from bringing this section 1983 action against the State itself.

---

**4.** The present case involves only the question of whether a *state's* waiver of its eleventh amendment immunity is a matter of state law. This should be distinguished from the situation in which *Congress,* in the exercise of its constitutional power to regulate commerce, attaches the condition of amenability to suit upon any state participating in the regulated sphere, *Parden v. Terminal Railway Co.,* 377 U.S. 184, 192–98, 84 S.Ct. 1207, 1212–16, 12 L.Ed.2d 233 (1964); where Congress explicitly abrogates a state's eleventh amendment immunity as a condition of participation in federal programs, *see, e.g., Florida Department of Health v. Florida Nursing*

*Home,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Employees of the Department of Public Health & Welfare v. Department of Public Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); or where Congress authorizes federal courts to enter awards against states as a means of enforcing the substantive guarantees of the fourteenth amendment, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Under each of these latter circumstances, the question of whether the state has actually entered the regulated sphere so as to subject itself to congressional regulation is one of federal law.

### III. THE STATE AS A "PERSON" UNDER SECTION 1983

That the State of Rhode Island has waived its eleventh amendment immunity to suit in federal court does not compel the conclusion that the State was a proper defendant in this action. The State can only be held liable if it is a "person" as the term is used in 42 U.S.C. § 1983.

Title 42 U.S.C. § 1983 was originally enacted as section 1 of the Civil Rights Act of April 20, 1871, 17 Stat. 13. It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

States are ordinarily immune to suit under this statute because of the protection afforded them under the eleventh amendment.[5] This threshold barrier to suit has usually made it unnecessary for courts to focus on whether a state is a "person" under section 1983.[6] The issue is presented sharply in the present case, however, for Rhode Island has waived its eleventh amendment immunity. Therefore, if a state is considered a "person" under section 1983, Della Grotta has a cause of action against the State, while if it is *not* a "person," we must order the district court to dismiss the action against Rhode Island.

■ We think that a state like Rhode Island, which has waived its eleventh amendment immunity, is a person for section 1983 purposes. This issue was comprehensively discussed by Judge Pettine in *Marrapese v. Rhode Island*, 500 F.Supp. 1207, 1210–12 (D.R.I.1980), and we agree generally with his analysis. Certainly we agree that the Supreme Court did not hold differently in *Quern. See* note 6, *supra.*

In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), after an extensive review of the legislative history of section 1983, the Court stated that "[s]ince there is nothing in the 'context' of § 1 of the Civil Rights Act calling for a restricted interpretation of the word 'person,' the language of that section should prima facie be construed to include 'bodies politic' among the entities that could be sued." *Id.*, at 689–90 n. 53, 98 S.Ct. at 2035 n. 53. *See also Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). The Court observed that the statute "was intended to provide a remedy, to be broadly construed, against all forms of official violation of

---

5. In *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court held that in enacting section 1983, Congress did not intend to abrogate the states' eleventh amendment immunity. *Cf.* note 4, *supra.*

6. A number of courts have not recognized the dual nature of this inquiry. *See, e.g., Ruiz v. Estelle*, 679 F.2d 1115, 1136–37 (5th Cir.), *aff'd in part*, 688 F.2d 266 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Holladay v. Montana*, 506 F.Supp. 1317, 1321 (D.Mont.1981); *Bailey v. Ohio State University*, 487 F.Supp. 601, 603 (S.D.Ohio 1980); *cf. Quern*, 440 U.S. at 350–51, 99 S.Ct. at 1150–51 (Brennan, J., concurring). There are two questions: (1) is the state immune from suit under the eleventh amendment? and (2) is the state a "person" under the statute? That a state may be immune from suit does not require the conclusion that it is not a "person" under the statute and therefore is not suable in the event it has waived its immunity. In *Quern*, the majority

did not decide whether a state is a "person" although challenged to do so by Justice Brennan in his concurrence. *See Marrapese v. Rhode Island*, 500 F.Supp. 1207, 1211 & n. 9 (D.R.I. 1980). As noted in footnote 5, *supra, Quern* was based entirely on the eleventh amendment. The Court stated its holding as follows:

> [U]nlike our Brother Brennan, we are simply unwilling to believe … that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States. We therefore conclude that neither the reasoning of *Monell* or of our Eleventh Amendment cases subsequent to *Edelman*, nor the additional legislative history or arguments set forth in Mr. Justice Brennan's opinion, justify a conclusion different from that which we reached in *Edelman*.

*Quern*, 440 U.S. at 341, 94 S.Ct. at 1145. In *Edelman*, as in *Quern*, the Court did not address the issue of whether states are "persons" within section 1983.

federally protected rights," *id.*, 436 U.S. at 700–01, 98 S.Ct. at 2040–41, and therefore held that municipalities and other local governmental units are "persons" for purposes of section 1983.

While the Court expressly limited its holding in *Monell* to "local governmental units which are not considered part of the State for Eleventh Amendment purposes," *id.*, at 690 n. 54, 98 S.Ct. at 2035 n. 54, we see nothing in *Monell* to suggest that, apart from eleventh amendment considerations, a state should be viewed differently from other bodies politic. Where, as here, a state has waived its eleventh amendment immunity, there is no principled reason to distinguish between states and municipalities as "persons" suable under section 1983.

■ We therefore hold that a state is a "person" within section 1983 such that, where it has voluntarily waived its eleventh amendment immunity to suit in federal court, it may be held liable in the same respect as municipalities and local units of government.[7]

## IV. SUFFICIENCY OF THE EVIDENCE

■ Rhode Island argues that, as a matter of law, there was insufficient evidence to warrant a finding that the State of Rhode Island was liable for the alleged deprivation of plaintiff Della Grotta's con-

stitutional rights. It makes this argument in reliance on the established principle that governmental bodies cannot be held liable under section 1983 on *respondeat superior* principles, *i.e.*, they are not liable just because a person in their employ violates section 1983. *Monell*, 436 U.S. at 690–95, 98 S.Ct. at 2035–38. Here, as we will discuss below, there was no evidence that Officer Coons was acting pursuant to any "policy or custom" of the State of Rhode Island when he violated Della Grotta's rights. The State contends, therefore, that the district court erred in failing to grant its motions for judgment notwithstanding the verdict or, in the alternative, for a new trial.

The State, however, forfeited its right to judgment n.o.v. by failing to move for a directed verdict at the close of all the evidence. Under Fed.R.Civ.P. 50(b), the making of a motion for directed verdict at the close of all the evidence is a prerequisite to a motion for judgment n.o.v. *R & R Associates, Inc. v. Visual Scene, Inc.*, 726 F.2d 36, 38 (1st Cir.1984); *Martinez Moll v. Levitt & Sons of Puerto Rico*, 583 F.2d 565, 568 (1st Cir.1978); *LaForest v. Autoridad de las Fuentes Fluviales*, 536 F.2d 443, 445 (1st Cir.1976); 9 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2537 (1971).[8]

The State maintains that its "technical noncompliance" with Rule 50(b) should not

---

**7.** Several lower courts have similarly ruled, apart from eleventh amendment considerations, that a state is a "person." *See, e.g., Gay Student Services v. Texas A & M University*, 612 F.2d 160, 163–65 (5th Cir.), *cert. denied*, 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *Meeker v. Addison*, 586 F.Supp. 216, 225–26 (S.D.Fla.1984); *Harris v. Arizona Board of Regents*, 528 F.Supp. 987, 991–92 (D.Ariz.1981); *Irwin v. Calhoun*, 522 F.Supp. 576, 583–85 (D.Mass.1981); *Marrapese v. Rhode Island*, 500 F.Supp. 1207, 1209–12 (D.R.I.1980). While there exist post-*Monell* cases suggesting that states are *not* persons for purposes of section 1983, we have found no case so stating in the present context, where the state has waived its eleventh amendment immunity. *See, e.g., Toledo, Peoria & W.R. Co. v. Illinois*, 744 F.2d 1296, 1298–99 n. 1 (7th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985); *Ruiz v. Estelle*, 679 F.2d 1115, 1137 n. 75 (5th Cir.), *aff'd in part*, 688 F.2d 266 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Laje v. R.E. Tho-*

*mason General Hospital*, 665 F.2d 724, 726–27 n. 2 (5th Cir.1982); *Emswiler v. McCoy*, 622 F.Supp. 786, 788 (S.D.W.Va.1985); *Croatan Books v. Virginia*, 574 F.Supp. 880, 883–84 (E.D.Va.1983); *Kompara v. Board of Regents of the State University*, 548 F.Supp. 537, 540–42 (M.D.Tenn.1982).

**8.** Rule 50(b) provides:

**Motion for Judgment Notwithstanding the Verdict.** *Whenever a motion for a directed verdict made at the close of all the evidence* is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.... [A] party *who has moved for a directed verdict* may move to have the verdict and any judgment entered thereon set aside and to have judgment entered *in accordance with his motion for a directed verdict*....

(Emphasis added.)

have barred its motion for judgment n.o.v. The State's noncompliance with Rule 50(b) was far more than technical, however; at no time did the State inform the district court (much less make a formal motion) that it desired a review of all the evidence for sufficiency as a matter of law.

The State would also like to fit its case within the very narrow exception adopted by this court in *Bayamon Thom McAn, Inc. v. Miranda*, 409 F.2d 968, 971–72 (1st Cir.1969). *See also Beaumont v. Morgan*, 427 F.2d 667, 669 (1st Cir.), *cert. denied*, 400 U.S. 882, 91 S.Ct. 120, 27 L.Ed.2d 121 (1970). In *Bayamon*, defendants moved for a directed verdict at the close of the plaintiff's case. The district court expressly reserved ruling on the motion, and indicated that it would not rule on the motion until after the case went to the jury. Thereafter, defendant presented evidence that occupied only two pages of the trial transcript, took no more than a few minutes, and did not even bear on the central issue in the case. The panel held that, under the very unusual facts of the case, where the defendant had moved for a directed verdict (albeit prematurely), and the district court made clear its disposition to let the case go to the jury, and where the only evidence presented by the defendant was brief and could not possibly have changed the court's decision on the motion for a directed verdict, the failure to renew the motion was not necessarily fatal to the subsequent motion for judgment n.o.v.

The proceedings below in the instant case were marked by none of the peculiarities that warranted *Bayamon*'s deviation from the general rule that a motion for judgment n.o.v. must be preceded by a motion for directed verdict at the close of all the evidence. The district court here gave defendant no indication that its motion for directed verdict at the close of plaintiff's case would suffice to preserve the issue for review. *See Martinez Moll v. Levitt & Sons of Puerto Rico*, 583 F.2d 565, 569–70 (1st Cir.1978). In addition, in

contrast to the scant evidence presented by defendant following the motion for directed verdict in *Bayamon*, defendants' evidence in the present case, although limited to a single witness, took place over the course of two days, and constituted nearly half of the trial transcript. *See Gillentine v. McKeand*, 426 F.2d 717, 722–23 (1st Cir. 1970). Indeed, it can hardly be disputed that plaintiff's case, at least against Coons, was far stronger at the close of all evidence than it was at the time the original motion for directed verdict was made. Under such circumstances, the State was clearly required to renew its motion.

■ Rhode Island is thus barred from judgment n.o.v. by its counsel's failure to follow the dictates of Rule 50(b). But Rhode Island also moved for a new trial, and we believe that where, as here, the verdict is totally without legal support because of the lack of *any* evidence on a key element of plaintiff's case, it was error to deny a new trial. The weight of authority favors the proposition stated by the Second Circuit in *Oliveras v. American Export Isbrandtsen Lines, Inc.*, 431 F.2d 814, 817 (2d Cir.1970), that "where the undisputed evidence results in a verdict that is totally without legal support justice requires a new trial despite counsel's failure to move for a directed verdict prior to submission of the case to the jury."[9] This court took a similar approach in *Sears v. Pauly*, 261 F.2d 304 (1st Cir.1958), although we hesitated in *LaForest v. Autoridad de las Fuentes Fluviales*, 536 F.2d 443, 445 (1st Cir.1976), perhaps because our earlier decision in *Sears* was not called to our attention. The Third Circuit has taken the same approach, *Cowger v. Arnold*, 460 F.2d 219 (3d Cir.1972), and the leading commentators approve. 6A J. Moore, *Moore's Federal Practice* ¶ 59.04[5] (2d ed. 1985); 9 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2539 (1971). Accordingly, if there was a total absence of evidence on an essential element of plaintiff's proof, the district court should have grant-

**9.** We will, of course, insist that a motion for new trial have been made in the district court, as it was here. We do not suggest that, without

such a prior motion, we would later feel free to order a new trial. *Cf. Martinez Moll v. Levitt & Sons of Puerto Rico*, 583 F.2d at 570.

ed a new trial as the State requested, although it properly denied a judgment n.o.v. because of the earlier failure to move for a directed verdict.

We agree with Rhode Island that Della Grotta's case against the State was totally lacking in evidence of an essential element. Plaintiff presented a total of five witnesses. Della Grotta himself testified as to the facts of the incident on July 19, 1983, and the subsequent events leading to his arraignment on July 29. Della Grotta's father and brother each testified to the particular aspects of the case that they observed, as did John Leyden, a lifeguard at Goddard Park on July 19. The plaintiff also asked two questions of Officer Coons, neither of which was related to the conduct of the State.

Defendant Coons and the State presented only one witness: Coons himself. Coons testified in some detail regarding his actions during the July 19 incident and during the subsequent ten days.

At no time was any evidence introduced that even suggested Coons acted in accordance with any State "policy" or "custom" in violating Della Grotta's constitutional rights. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38. There was no evidence that Coons acted pursuant to State policy or custom in detaining Della Grotta after he was satisfied Della Grotta had not committed the theft. There was no evidence that Coons acted in accordance with State policy or custom in charging Della Grotta with disorderly conduct despite the dearth of evidence to support such a charge.

Similarly, there was no evidence that State policy or custom dictated that Della Grotta not be informed of the withdrawal of Meddaugh's complaint against him, nor that the assault charge be substituted for the charge of disorderly conduct. Nor was there any evidence presented that Coons's actions were the result of a grossly substandard state training program.[10]

All of the evidence in the case was directed to the facts of the particular events in which plaintiff was involved: the incident at Goddard Park, plaintiff's detention at the police station, and the events leading to his subsequent arraignment. The only basis Della Grotta presents for claiming that his injuries resulted from a custom or policy of the State is the inference that, if such a deprivation of rights occurred in this instance, it must have occurred at other times as well.[11]

The case law is clear that this asserted inference will not support such a verdict against the State. In *City of Oklahoma City v. Tuttle*, — U.S. —, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), seven members of the Supreme Court agreed that proof of a single incident of unconstitutional activity is insufficient as a matter of law to support liability under *Monell*, "unless proof of the incident includes proof that it was caused by an existing, unconstitutional [governmental] policy, which policy can be attributed to the [governmental] policymaker." *Id.*, 105 S.Ct. at 2436.[12]

The district court recognized the complete lack of evidence supporting the evidence against the State. It was under

---

10. An isolated episode of misperformance by a single officer is not of itself a basis for inferring improper training. *City of Oklahoma City v. Tuttle*, — U.S. —, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). *See also Kibbe v. Town of Springfield*, 777 F.2d 801, 804–05 (1st Cir.1985).

11. Plaintiff's counsel argued to the court below that "[t]he State of Rhode Island has an obligation to come in and at least put in some evidence to the Court that this isn't the way we do things." The failure of the State to do so, counsel asserted, created a "reasonable inference ... that the State of Rhode Island does this all the time at Goddard Park."

12. Our recent decision in *Kibbe v. Town of Springfield*, 777 F.2d 801 (1st Cir.1985), is of no help to plaintiff. In *Kibbe*, three different po-

lice officers shot at the decedent during the course of an automobile chase, and at least ten officers were involved in the incident altogether. The panel regarded this widespread activity as being more reflective of departmental operating procedures and policies than the single incident involving a single officer marking both *Tuttle* and the present case. In *Kibbe* this evidence, along with specific evidence of departmental rules violated by the officers involved, and of the training received by city police officers (none of which evidence exists on the present record), was thought sufficient to create a jury question as to whether the defendant city was grossly negligent in failing to train its officers.

the misapprehension, however, that it should not grant a new trial where no motion for directed verdict had been made at the close of all the evidence, even if there was no evidence to support the jury verdict.[13] While we fully agree with the district court's criticism of the State's failure to lay a proper foundation for its more cogent motion, that for judgment n.o.v., the State was entitled to prevail on its motion for new trial given the complete lack of evidence that any "policy or custom" of the State contributed to Della Grotta's injuries.

*The judgment of the district court relative to the defendant State of Rhode Island is therefore vacated, and the case is remanded for a new trial as to that defendant.*

---

**13.** At the close of the hearing on post-trial motions, the district court stated,

I must be frank to say that I am not aware of any evidence in this record which provides a basis for an inference that this event occurred by means of some custom or practice or policy of the State of Rhode Island. Be that as it may, it seems to me that at some point in time it is too late to make certain arguments. Here the defendant is seeking a new trial, and presumably judgment notwithstanding the verdict. I suppose it could be argued that to permit this verdict to stand would constitute an injustice, in that probably [there] isn't a basis for a verdict against the State. On the other hand, the parties here have a responsibility to raise the questions that should be raised at the appropriate time, and that was

not done in this instance. The system of justice is hardly going to function very well on the basis of afterthoughts. The time for protecting the client's rights and for contemplation of those rights, is prior to trial, not after, when things do not turn out well and there is a thrashing about to find some reason why not.

It seems to me that in this case, the interests of justice are better served by permitting the verdicts to stand; that having submitted this case to the jury on the basis of unobjected to instructions, without a motion for direction, the State in this instance is not in the position now to come in and argue that that shouldn't have happened, simply because the jury came back with a verdict that was unfavorable to the State of Rhode Island.