**ELLIS FISCHEL STATE CANCER HOSPITAL, Petitioner,**

v.

**Ray MARSHALL, Secretary, United States Department of Labor, Respondent,**

**Clifford W. Richter, Intervenor/Respondent.**

**No. 79–1771.**

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1980.

Decided Sept. 11, 1980.

---

Larry R. Marshall, Asst. Atty. Gen., Jefferson City, Mo. (argued), and John Ashcroft, Atty. Gen., Jefferson City, Mo., on brief, for petitioner.

Carl F. Sapp, Sapp, Woods & Orr, Columbia, Mo., for respondent–intervenor, Richter.

Marc P. Richman, Atty., Civ. Div. Dept. of Justice, Washington, D.C. (argued), Alice Daniel, Asst. Atty. Gen., and Anthony J. Steinmeyer, Atty., Dept. of Justice, Washington, D.C., on brief, for respondent.

Before HENLEY and McMILLIAN, Circuit Judges, and HARPER,* Senior District Judge.

McMILLIAN, Circuit Judge.

Ellis Fischel State Cancer Hospital (the petitioner), and agency of the State of Missouri, petitions this court for review of an order by the Secretary of the United States Department of Labor (the Secretary), providing reinstatement, back pay, attorney's fees and other relief to Dr. Clifford Richter. The Secretary found that Dr. Richter, a medical physicist, was terminated by petitioner in retaliation for reporting violations by petitioner of federal law in regard to use of radioactive materials. Petitioner argues that the eleventh amendment bars relief to Dr. Richter and that the order was arbitrary and capricious and not supported by substantial evidence. We affirm.

Petitioner is a hospital operated by the State of Missouri on a not–for–profit basis to treat cancer patients and is licensed by the United States Nuclear Regulatory Commission (the Commission) to use radioactive material in therapy. Dr. Richter, who was hired in 1974 as petitioner's chief medical physicist, headed the medical physics department and, as the hospital radiation safety officer, served as the hospital's contact with the Commission. Early in 1978, a patient, whose treatment included the implanting of iridium–192, a radioactive iso-

---

* The Honorable Roy W. Harper, United States Senior District Judge for the Eastern and West-  ern Districts of Missouri, sitting by designation.

tope, in her body, was released although some iridium had mistakenly been left in her body. The mistake was discovered about three months later on March 28, 1978, and Dr. Richter promptly reported the mishap to the Commission. The failure to remove the iridium was found by the Commission to have violated a condition of the hospital's license to use regulated radioactive materials in therapy and a Commission regulation, 10 C.F.R. § 35.14(b)(5)(vii). The Commission report on the matter indicated that persons who came in contact with the patient were exposed to significant amounts of radiation, although the exposure was found by the Commission to be within allowable limits based on an estimate of maximum exposure to the patient's spouse if he spent about ten hours a day at a distance of one meter from the patient.

Prior to making the Commission report, Dr. Richter had consistently received extremely favorable evaluations of his work, and early in 1978, the hospital administrator had recommended a 39% salary increase for Dr. Richter. Six days after Dr. Richter's report to the Commission, the hospital executive committee met and had a critical discussion of the medical physics department. Dr. Richter, although a member of the executive committee, was excluded from the meeting. From April through August of 1978, Dr. Richter received three progressively less favorable evaluations of his work. In June, the Department of Medical Physics was downgraded to a division within the Department of Radiotherapy, resulting in a reduction of status for Dr. Richter. Minutes of a subsequent executive board meeting reported, "Apparently Dr. Richter is not going to resign despite his statement that he would if he lost his departmental director position."

In July, after Dr. Richter was connected by hospital staff to the appearance of a newspaper article concerning storage of radioactive materials at the hospital, Dr. Richter received a three-day suspension and a letter of reprimand. The letter of reprimand did not, however, mention any newspaper articles, but instead condemned Dr. Richter for "fail[ing] to extend to the staff and administration of this hospital . . . the professional courtesy to follow normal procedures in bringing problems to the attention of those persons ultimately responsible for the operation of the hospital." This language reiterates criticism in April by the hospital's administrator, who condemned Dr. Richter for making his report to the Commission without first formally reporting the iridium incident internally.

Finally, in December 1978, the hospital staff was again reorganized to eliminate the division of medical physics. At the time, the hospital employed three medical physicists; Dr. Richter was the most senior. Each of the two junior medical physicists was assigned to be a member of a medical team in the reorganization, but Dr. Richter was laid off, purportedly because the position of chief medical physicist had been abolished. In the administrative proceedings, however, Dr. Nestor Canoy, the hospital's acting chief of staff, testified that after Dr. Richter's layoff the hospital had not had enough medical physicists and needed a chief medical physicist.

After his layoff, Dr. Richter complained to the Commission that he had been terminated in retaliation for his report of the iridium incident in violation of Commission regulations, 10 C.F.R. § 19.16(c) (1978). The complaint was referred to the Secretary of Labor for proceedings under 42 U.S.C. § 5851.[1] A trial was held in May 1979 before an administrative law judge,[2] who made findings and recommended reinstatement of Dr. Richter, back pay, attorney's fees and deletions of adverse references placed in Dr. Richter's file after April 1978. On August 10, 1979, the Secretary adopted the findings of the administrative law judge and issued the recommended order. *See* 42 U.S.C. § 5851(b)(2)(B). Petitioner sought review of the order in a time-

---

1. *See* Appendix.

2. The Honorable Samuel A. Chaitovitz, Administrative Law Judge.

ly fashion in this court. *See* 42 U.S.C. § 5851(c)(1). Subsequently, Dr. Richter obtained leave to intervene in this proceeding and filed a petition to enforce the order.

■ Before reaching petitioner's claims, we dismiss Dr. Richter's petition for enforcement and dismiss him as a party. This court has no jurisdiction over any enforcement proceeding under 42 U.S.C. § 5851, which specifically requires enforcement proceedings in district court. At oral argument counsel for Dr. Richter conceded our lack of jurisdiction and Dr. Richter's dubious status as a party in this proceeding. We do not understand Dr. Richter to claim that he is adversely affected or aggrieved by the Secretary's order; therefore, we lack jurisdiction to entertain his petition for enforcement.[3] 42 U.S.C. § 5851(c)(1). We dismiss on our own motion. Fed.R.Civ.P. 12(h).

■ We next address petitioner's claims that the order was not supported by substantial evidence or that the order was arbitrary and capricious under the standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), specifically made applicable to this proceeding by 42 U.S.C. § 5851(c)(1). No lengthy discussion is needed to dispose of these arguments; the largely undisputed chronology of events outlined above provides substantial support for the Secretary's order. Petitioner makes much of the failure of any of the witnesses who appeared in the administrative proceeding on Dr. Richter's behalf to testify to personal and direct knowledge of retaliatory motivation. There is no requirement for such testimony, and there was certainly circumstantial evidence to support the finding of retaliation. *Cf. Zoll v. Eastern Allamakee Community School District*, 588 F.2d 246 (8th Cir. 1978).

Petitioner also argues that members of the hospital staff testified as to the absence of retaliatory motive behind the reorganization during which Dr. Richter was terminated. According to petitioner, the Secretary's finding of retaliatory motive unjustifiably implies that hospital staff who testified to the contrary perjured themselves. But their testimony failed in the administrative law judge's view to explain the termination. The presence or absence of retaliatory motive is a legal conclusion and is provable by circumstantial evidence even if there is testimony to the contrary by witnesses who perceived lack of such improper motive. *See The Struggle*, 13 U.S. (9 Cranch) 71, 3 L.Ed. 660, (1815); *Schultz & Lindsay Construction Co. v. Erickson*, 352 F.2d 425 (8th Cir. 1965); 1 J. Wigmore, Evidence in Trials at Common Law §§ 25–26 (1940). Moreover, there was testimony by Dr. Richter who expressed the opinion that retaliatory motive did cause the termination and by Dr. Canoy who thought retaliation was at least a part of the motive. We cannot find in the record any plausible explanation which does not include some element of retaliation for the proceedings against Dr. Richter six days after the Commission report, the sudden decline in Dr. Richter's evaluations and the decision to terminate him during a staff reorganization in which two less senior medical physicists were retained. We therefore conclude the Secretary's conclusion was supported by the evidence.[4] *Cf. Womack v. Munson*, 619

---

**3.** We therefore do not agree with Dr. Richter's suggestion that we amend the Secretary's award of attorney's fees to provide compensation for work done in proceedings in this court. Dr. Richter did not become a person aggrieved or adversely affected by the Secretary's order because he incurred additional attorney's fees subsequent to that order. He is not entitled to attorney's fees for filing a petition for enforcement in a forum obviously lacking jurisdiction on the face of the statute. 42 U.S.C. § 5851(c), (d), (e).

**4.** Petitioner also appears to argue that the Secretary's order is an abuse of discretion, *see* 5 U.S.C. § 706(2)(A), because the statutory provisions for licensing of medical therapy facilities provided for a "minimum amount of . . . regulation consistent with [the commission's] obligations . . . to promote the common defense and security and to protect the health and safety of the public." 42 U.S.C. § 2134(a). Petitioner seems to read this provision to mean that regulations are valid only if consistent both with the common defense and security and also with the public health and safety. Petitioner concedes that the Secretary's order protects public health and safety, but argues that the order is improper because it does not

F.2d 1292 (8th Cir. 1980) (finding of retaliatory discharge under Title VII of the Civil Rights Act of 1964).

Petitioner also contends that the Secretary's order was contrary to its immunity under the eleventh amendment of the United States constitution, which petitioner asserts prohibits any administrative action against a state if initiated by a citizen. If so, the order would be improper under the Administrative Procedure Act, 5 U.S.C. § 706(2)(B), prohibiting administrative action in derogation of constitutional right or immunity. Petitioner, however, cites no case law for the proposition that the eleventh amendment is any bar to administrative action, and we reject that position. The eleventh amendment bars *judicial* action, not action by Congress or the executive branch. *See generally* Tribe, *Intergovernmental Immunities in Litigation, Taxation and Regulation: Separation of Powers Issues in Controversies about Federalism*, 89 Harv.L.Rev. 682 (1976). Courts have found no eleventh amendment bar to actions brought by federal administrative agencies pursuant to complaints of private individuals. *See Marshall v. A & M Consolidated Independent School District*, 605 F.2d 186, 188–90 (5th Cir. 1979) (action under Fair Labor Standards Act by Secretary of Labor on behalf of citizen to recover back pay not barred by eleventh amendment); *Brennan v. State of Iowa*, 494 F.2d 100 (8th Cir. 1974), *cert. denied*, 421 U.S. 1015, 95 S.Ct. 2422, 44 L.Ed.2d 683 (1975) (*simil*). *See also Employees of the Dept. of Public Health and Welfare v. Dept. of Public Health and Welfare*, 411 U.S. 279, 285–86, 93 S.Ct. 1614, 1618, 36 L.Ed.2d 251 (1973); *United States v. Mississippi*, 380 U.S. 128, 140–41, 85 S.Ct. 808, 814–15, 13 L.Ed.2d 717 (1965). Implicit in these cases is the conclusion that administrative action against states pursuant to individual complaints does not run afoul of the eleventh amendment. For it would be absurd to hold that the eleventh amendment did not bar the Secretary from bringing a lawsuit,

but did bar the Secretary from proceeding administratively to determine if the lawsuit was warranted. The eleventh amendment, therefore, is no bar to the Secretary's order.

We do not reach any question what effect the eleventh amendment might have in any potential enforcement proceedings that may occur under 42 U.S.C. § 5851(d) or (e) or other provisions, if the state should refuse to comply with the Secretary's order.

Accordingly, the order of the Secretary is affirmed.

### APPENDIX

42 U.S.C. § 5851 provides in relevant part:

§ 5851. Employee protection

Discrimination against employee

(a) No . . . Commission licensee . . . may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee)–

(1) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this chapter or the Atomic Energy Act of 1954, as amended, or a proceeding for the administration or enforcement of any requirement imposed under this chapter or the Atomic Energy Act of 1954, as amended;

(2) testified or is about to testify in any such proceeding or;

(3) assisted or participated or is about to assist or participate in any manner in such a proceeding . . . or in any other action to carry out the purposes of this Act or the Atomic Energy Act of 1954, as amended.

Complaint, filing and notification

(b)(1) Any employee who believes that he has been discharged or otherwise dis-

have any relation to common defense and security. We think this argument is frivolous.

Protection of public health and safety is a valid objective under § 2134(a).

criminated against by any person in violation of subsection (a) of this section may, within thirty days after such violation occurs, file (or have any person file on his behalf) a complaint with the Secretary of Labor ( . . . the "Secretary") alleging such discharge or discrimination. Upon receipt of such a complaint, the Secretary shall notify the person named in the complaint of the filing of the complaint and the Commission.

(2)(A) Upon receipt of a complaint filed under paragraph (1), the Secretary shall conduct an investigation of the violation alleged in the complaint. . . . Within ninety days of the receipt of such complaint the Secretary shall, unless the proceeding on the complaint is terminated by the Secretary on the basis of a settlement entered into by the Secretary and the person alleged to have committed such violation, issue an order either providing the relief prescribed by subparagraph (B) or denying the complaint. An order of the Secretary shall be made on the record after notice and opportunity for public hearing. The Secretary may not enter into a settlement terminating a proceeding on a complaint without the participation and consent of the complainant.

(B) If, in response to a complaint filed under paragraph (1), the Secretary determines that a violation of subsection (a) of this section has occurred, the Secretary shall order the person who committed such violation to (i) take affirmative action to abate the violation, and (ii) reinstate the complainant to his former position together with the compensation (including back pay), terms, conditions and privileges of his employment, and the Secretary may order such person to provide compensatory damages to the complainant. If an order is issued under this paragraph, the Secretary, at the request of the complainant shall assess against the person against whom the order is issued a sum equal to the aggregate amount of all costs and expenses (including attorneys' and expert witness fees)

reasonably incurred, as determined by the Secretary, by the complainant for, or in connection with, the bringing of the complaint upon which the order was issued.

### Review

(c)(1) Any person adversely affected or aggrieved by an order issued under subsection (b) of this section may obtain review of the order in the United States court of appeals for the circuit in which the violation, with respect to which the order was issued, allegedly occurred. The petition for review must be filed within sixty days from the issuance of the Secretary's order. Review shall conform to chapter 7 of Title 5. The commencement of proceedings under this subparagraph shall not, unless ordered by the court, operate as a stay of the Secretary's order.

(2) An order of the Secretary with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in any criminal or other civil proceeding.

### Jurisdiction

(d) Whenever a person has failed to comply with an order issued under subsection (b)(2) of this section, the Secretary may file a civil action in the United States district court for the district in which the violation was found to occur to enforce such order. In actions brought under this subsection, the district courts shall have jurisdiction to grant all appropriate relief including, but not limited to, injunctive relief, compensatory, and exemplary damages.

### Commencement of action

(e)(1) Any person on whose behalf an order was issued under paragraph (2) of subsection (b) of this section may commence a civil action against the person to whom such order was issued to require compliance with such order. The appropriate United States district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such order.

(2) The court, in issuing any final order under this subsection, may award costs of litigation (including reasonable attorney and expert witness fees) to any party whenever the court determines such award is appropriate.