State of **RHODE ISLAND, Rhode Island Department of Environmental Management, Plaintiff,**

v.

**UNITED STATES of America, United States Department of Labor, Alexis Herman, Secretary of Labor, Occupational Safety and Health Administration, Charles N. Jeffress, Assistant Secretary of Labor for Occupational Safety and Health, Ruth E. McCully, Regional Administrator, Region 1, Osha, Beverly Migliore, Barbara Raddatz, Joan Taylor, and Does 1 through 10, Defendants.**

**No. C.A. 00–44–T.**

United States District Court,
D. Rhode Island.

Sept. 29, 2000.

James R. Lee, Attorney's General's Office, Providence, RI, Alan M. Shoer, Debo-
rah Ann George, Dept. of Environmental Management, Providence, RI, for Rhode Island Dept. of Environmental Management, State of Rhode Island.

Anthony C. DiGioia, U.S. Attorney's Office, Providence, RI, Sandra M. Schraibman, Mark T. Quinlivan, U.S. Dept. of Justice, Washington, DC, for U.S., U.S. Dept. of Labor, Alexis M. Herman, OSHA, Charles N. Jeffress and Ruth E. McCully.

Joel D. Landry, Providence, RI, Ruth Ann Weidel, Washington, DC, for Beverly Migliore, Barbara Raddatz and Joan Taylor.

## MEMORANDUM AND ORDER

TORRES, Chief Judge.

### Introduction

The State of Rhode Island and the Rhode Island Department of Environmental Management (DEM) (collectively, the "State") brought this action to enjoin proceedings before the United States Department of Labor (DOL) in which several state employees seek damages and other relief against the State for alleged violations of the "whistleblower" protection provision of the Solid Waste Disposal Act, 42 U.S.C. § 6971 (the "whistleblower provision").

The case, presently, is before the Court for consideration of the State's motion for a preliminary injunction prohibiting any further "investigation" or "prosecution" of the aforesaid claims. The issue presented is whether the proceedings before the DOL are barred by the Eleventh Amendment to the United States Constitution, and/or the doctrine of sovereign immunity. Because I conclude that they are, the motion for a preliminary injunction is granted.

### Background

Beverly Migliore, Barbara Raddatz, and Joan Taylor (collectively, the "individual defendants" or the "claimants") are DEM employees. Each of them filed a complaint with DOL alleging that DEM violat-

ed the whistleblower provision by retaliating against them for reporting what they believed to be DEM's failure to properly implement the Solid Waste Disposal Act. Migliore filed a second complaint (Migliore II) alleging further retaliation for having filed her first complaint (Migliore I). The relief sought by the claimants includes ordering changes in the terms and conditions of employment that they regard as necessary to undo the effects of the alleged retaliation and to protect them from future retaliation; compensatory damages for mental anguish and an award of attorneys' fees.

## I. The Statutes and Regulations

The "whistleblower provision" is part of the Solid Waste Disposal Act, 42 U.S.C. §§ 6901–6992k (the "Act"). It provides, in relevant part as follows:

(a) General

No person shall fire, or in any other way discriminate against . . . any employee . . . by reason of the fact that such employee . . . has filed, instituted, or caused to be filed or instituted any proceeding under [The Solid Waste Disposal Act] or under any applicable implementation plan, . . .

(b) Remedy

Any employee . . . who believes that he has been fired or otherwise discriminated against by any person in violation of subsection (a) of this section may, . . . apply to the Secretary of Labor for a review of such firing or alleged discrimination. . . . If [the Secretary] finds that such violation did occur, he shall issue . . . an order . . . requiring the party committing such violation to take such affirmative action to abate the violation as the Secretary of Labor deems appropriate, including, but not limited to, the rehiring or reinstatement of the employee . . . to his former position with compensation. . . . Such order . . . shall be subject to judicial review in the same

manner as orders and decisions of the Administrator or [sic] subject to judicial review under this chapter.

The DOL has promulgated regulations setting forth the procedure to be followed by an employee seeking a remedy pursuant to subsection (b).[1] See 29 C.F.R. § 24. The regulations permit the employee to file a complaint with the Occupational Safety and Health Administration (OSHA), an agency within DOL. The Assistant Secretary who heads OSHA (the "Assistant Secretary") then becomes responsible for investigating and determining whether a violation has occurred.

After providing notice to both the party against which the complaint was filed and the federal agency charged with administering the program that is the subject of the complaint,[2] the Assistant Secretary determines whether a violation occurred. If the Assistant Secretary determines that there has been no violation, notice of that determination is filed with the Chief Administrative Law Judge (ALJ) in the DOL and copies are sent to the complainant and the respondent. On the other hand, if the Assistant Secretary finds that a violation occurred, an order is issued to abate the violation. In either event, the losing party may request a review of the Assistant Secretary's determination by an ALJ.

If no review is requested, the determination becomes the final order of the Secretary. If a review is requested, the ALJ conducts a de novo hearing at which the parties may present evidence and a record is kept. The Assistant Secretary may or may not choose to participate as a party or as amicus curiae.

Following that hearing, the ALJ may find no violation and dismiss the case; or, alternatively, may find a violation and issue an order requiring the respondent to abate the violation.

---

**1.** The procedure also applies to claims brought pursuant to similar whistleblower provisions in other federal statutes.

**2.** The Solid Waste Disposal Act is administered by the Environmental Protection Agency (EPA).

As already noted, the Act provides that abatement may include but is "not limited to, the rehiring or reinstatement of the employee . . . to his former position with compensation." However, in addition to employment related compensation, the Regulations purport to authorize an award of "compensatory damages." 29 C.F.R. § 24.7(c)(1). Neither the regulations nor the statute provide for the payment of penalties or fines to the United States.

The ALJ's decision becomes the final order of the Secretary unless a petition for review is filed with the DOL's Administrative Review Board (ARB) which may adopt or reject the decision. The ARB's decision, then, becomes the final order of the Secretary and the administrative phase of the process, mercifully, ends there.

However, the Secretary's order is subject to review by the District Court if the Secretary brings an enforcement action; or, if an aggrieved party appeals. *See* 42 U.S.C. § 6971(b).

## II. *The Relevant Facts*

Each of the four proceedings at issue was initiated by a complaint filed by the complainant's attorney. The complaint in Migliore I, the only complaint that has been presented to this Court, appears to be typical and is similar in form to a complaint that would be filed in a lawsuit. It identifies DEM as the "respondent," contains numbered factual allegations, citations to the statutes allegedly violated and a prayer for relief that includes demands for corrective action regarding the terms and conditions of Migliore's employment; "compensatory damages for mental anguish, pain, and suffering;" attorney fees and "all other relief to which Ms. Migliore may be entitled."

The Assistant Secretary determined that no violation had occurred and Migliore sought review by an ALJ. The ALJ presided over an evidentiary hearing that lasted for twenty-three days. Migliore and DEM were the only parties to that proceeding and they presented all of the evidence. After the hearing, the ALJ issued a lengthy decision awarding Migliore approximately $843,000 that, in addition to front pay, back pay, attorneys' fees and costs, included $400,000 in compensatory damages for emotional distress and damage to professional reputation.[3]

The other cases have not progressed as far through the administrative process. In Migliore II, the Assistant Secretary awarded $10,000 in damages, attorneys' fees and costs; and, in Raddatz's case, the Assistant Secretary investigated but found no violation. Appeals in both cases are pending before an ALJ. Taylor's case is still under investigation by the Assistant Secretary.

The State seeks to enjoin any further proceedings in these four cases on the ground that they are barred by the Eleventh Amendment and the doctrine of sovereign immunity.

### Standard of Review

In deciding whether a preliminary injunction is warranted, a district court must weigh four factors: (1) the likelihood that the movant, ultimately, will succeed on the merits; (2) the potential that the movant will be irreparably harmed if the injunction is not issued; (3) the hardship that would be imposed on the non-movant if the injunction does issue; and (4) the effect on the public interest of a grant or denial of the injunction. *Denovellis v. Shalala*, 135 F.3d 58, 62 (1st Cir.1998); *Gately v. Massachusetts*, 2 F.3d 1221, 1224

---

3. The award was:
   $150,000 in front pay;
   $15,000 in back pay;
   $400,000 in compensatory damages ($100,-000 for emotional distress; $50,000 for adverse physical health consequences; $250,000 in loss of professional reputation);

   $260,050 for attorneys' fees;
   $18,099.83 in costs and expenses for PEER; and
   payment of 2 years of benefits including insurance.

(1st Cir.1993). In assessing the second and third factors, the Court's task is to "balance the equities" by determining whether the potential for irreparable harm to the movant outweighs the potential hardship that would be imposed on the non-movant.

### Discussion

#### I. Likelihood of Success

##### A. Sovereign Immunity

##### 1. Sovereign Immunity, in General

■ The doctrine of sovereign immunity, when applicable, protects a state from being sued without its consent. Generally, it bars suits by private individuals against a state unless the state expressly waives its immunity; or, unless the immunity is validly abrogated by Congress.[4] *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 2258, 144 L.Ed.2d 636 (1999); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 65, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

■ However, under our federal system, sovereign immunity does not shield a state from suits by the United States for alleged violations of federal law. Sovereign immunity "does not confer upon the State a concomitant right to disregard the Constitution or valid federal law" nor does it "bar all judicial review of state compliance with the Constitution and valid federal law." *Alden,* 119 S.Ct. at 2266. *See also Employees of Department of Public Health and Welfare, Missouri v. Department of Public Health and Welfare, Missouri,* 411 U.S. 279, 285–86, 93 S.Ct. 1614, 1618–19, 36 L.Ed.2d 251 (1973). Thus, the United States may bring an action against a state to enforce a federal statute. That is true even when the enforcement action is initiated in response to a complaint by a private party or when a private party benefits from the action. *Employees,* 411 U.S. at 285–86, 93 S.Ct. 1614.

The basis for distinguishing between actions brought by the United States that may benefit private parties and actions brought by the private parties, themselves, is that:

> A suit which is commenced and prosecuted against a State in the name of the United States by those who are entrusted with the constitutional duty to 'take care that the laws be faithfully executed,' (citation omitted) differs in kind from the suit of an individual: ... Suits brought by the United States itself require the exercise of political responsibility for each suit prosecuted against a State, a control which is absent from a broad delegation to private persons to sue nonconsenting States.

*Alden,* 119 S.Ct. at 2267.

As stated in *Alden:*

> The difference between a suit by the United States on behalf of ... employees and a suit by the employees implicates a rule that the National Government must itself deem the case of sufficient importance to take action against the State; ... States have consented to suits of the first kind but not of the second.

*Id.* at 2269.

The distinction is one between an action by the United States to enforce federal law in which a private party derives an incidental benefit and an action by, or on behalf of, the private party, the objection of which is to obtain damages or other relief claimed by that party.

---

**4.** A state's immunity may be abrogated only if "Congress has unequivocally expressed its intent to abrogate the immunity" and, in so doing, "Congress has acted pursuant to a valid exercise of power." (Internal citations and quotation marks omitted) *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The latter requirement means that Congress must have acted pursuant to the enforcement powers conferred by § 5 of the Fourteenth Amendment rather than pursuant to its Article I legislative powers. *Id.* at 73, 116 S.Ct. 1114. The defendants do not contend that there has been an abrogation in this case.

### 2. *The Eleventh Amendment*

The sovereign immunity enjoyed by states finds expression in the Eleventh Amendment which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State ...

■ However, a state's sovereign immunity is much broader than the immunity conferred by the Eleventh Amendment. The Eleventh Amendment was not meant to limit the immunity previously enjoyed by states. On the contrary, it was intended to negate the Supreme Court's decision in *Chisholm v. Georgia,* 2 U.S. 419, 2 Dall. 419, 1 L.Ed. 440 (1793), which eroded on that immunity by holding that states were subject to suit by private individuals in federal court. *See Alden,* 119 S.Ct. at 2250–51. Thus, the Supreme Court has described "Eleventh Amendment immunity" as "convenient shorthand but something of a misnomer" because:

> ... The sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment. Rather, as the Constitution's structure, and its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today.

*Alden,* 119 S.Ct. at 2246.

Accordingly, although the Eleventh Amendment expressly bars only suits by citizens of *another* state, the Supreme Court has made it clear that a state's sovereignty also precludes a suit against it by the state's *own* citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Similarly, despite the fact that the Eleventh Amendment refers only to suits in *federal* court, the Supreme Court has held that Congress may not subject a state to suit in its own courts because sovereign immunity "does not turn on the forum in which the suits [are] prosecuted." *Alden,* 119 S.Ct. at 2256.

Moreover, the protection afforded by sovereign immunity is not limited to monetary awards and other judgments. The doctrine "also serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Seminole,* 517 U.S. at 58, 116 S.Ct. 1114.

■ In short, unless waived or validly abrogated, sovereign immunity bars the assertion or adjudication of claims made against a state by a private party and it protects a state from being required to appear and defend itself against such claims regardless of the forum in which those claims are made.

### 3. *Applicability to these Proceedings*

■ A state's sovereign immunity is not negated by adjudicating the claim of a private party before an administrative tribunal and labeling the proceeding as an enforcement action by the United States. In determining whether a proceeding is one in which a private party seeks to litigate its claim against a state or whether it is an action by the United States to enforce federal law, substance is more important than form. The determination turns on the nature of the proceeding, the relief sought and the role played by the governmental agency rather than on the forum in which the proceeding takes place or how the proceeding is characterized. The critical inquiry is whether the proceeding is one brought *by* the United States to investigate alleged violations of federal law and to compel compliance; or, whether it is one brought by a private party that seeks an award of damages or other relief against the state.

In this case, it is clear that, at least at the ALJ stage, the proceedings in question are not investigations or enforcement actions by DOL; but, rather, are proceedings to adjudicate the individual defendants' claims against the state for alleged

violations of the whistleblower provision. The proceedings were not initiated by DOL after investigating and concluding that a violation may have occurred. They were initiated by detailed complaints filed by claimants' counsel which frame the factual and legal issues to be determined. In fact, in both Migliore I and Raddatz, the Assistant Secretary investigated and determined there was no violation.

In addition, the relief sought in these proceedings and the relief granted in Migliore I consists almost entirely of compensatory damages and injunctive relief awarded to the individual claimants. As already noted, the award in Migliore I includes $400,000 as compensation for mental anguish, physical injury and damage to reputation which are the hallmarks of a private tort action, not an administrative enforcement proceeding.

Finally, DOL is neither a party to nor a participant in the hearings before the ALJ. Those proceedings are prosecuted by the claimants and they are the ones who present the evidence supporting their claims. Indeed, in its letter notifying the parties of the Assistant Secretary's determination, DOL specifically states that "[i]t should be made clear to all parties that the U.S. Department of Labor does not represent any of the parties in [any] hearing" before an ALJ. Thus, DOL, through its ALJ's, functions solely as a forum for hearing and deciding the individual defendants' claims.

DOL's adjudicative role is underscored by the fact that an ALJ is a quasi-judicial officer who, although employed by DOL, "exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." *Butz v. Economou,* 438 U.S. 478, 513, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978). Because an ALJ is supposed to act as an impartial arbiter who is free from agency influence, an ALJ is not subject to supervision or direction by an agency employee with investigative or prosecutorial functions and cannot consult any person on any fact at issue in the proceeding without providing notice and an opportunity to participate to all parties. 5 U.S.C. § 554(d). *See generally* II Kenneth Culp Davis, Administrative Law Treatise § 9.9, at 97 (3d ed.1994).

Given these facts, this Court rejects the defendants' characterization of the proceedings as an investigation by the Secretary to determine whether a lawsuit should be brought against the State to enforce the "whistleblower provision."

Nor is this Court persuaded by the defendants' argument that the proceedings do not subject the State to any "coercive process" and that the state is under no compulsion to appear and defend itself because the Secretary lacks enforcement powers and his decision is reviewable by the district court. DOL's own regulations claim the power, among other things, to "require the production of any documentary or other evidence deemed necessary to determine whether a violation of the law has been committed." 29 C.F.R. § 24.4.

More importantly, as a practical matter, the state's failure to appear and defend would place it at a considerable, if not insurmountable, disadvantage in any ensuing litigation. The scope of any review of the Secretary's order by the district court would be limited to review of the record compiled before the agency. 5 U.S.C. § 556(e) and 5 U.S.C. § 706. Furthermore, the findings and conclusions of the Secretary would be entitled to considerable deference and could be disturbed only if they are not supported by substantial evidence. 5 U.S.C. § 706(2)(E).

Moreover, the Court must defer to the agency's interpretation of statutes that the agency is charged with administering. *See, e.g., Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The defendants cite *Ellis Fischel State Cancer Hospital v. Marshall,* 629 F.2d 563 (8th Cir.1980) for the proposition that the doctrine of sovereign immunity does not apply to proceedings before administrative

agencies. That reliance is misplaced for several reasons.

First, *Marshall* is readily distinguishable from the instant cases. In *Marshall*, a doctor complained that a state hospital terminated his employment because he reported violations, by the hospital, of regulations governing the use of radioactive materials. The Secretary of Labor initiated administrative proceedings against the hospital pursuant to a whistleblower provision contained in 42 U.S.C. § 5851.[5] Eventually, the case was presented to an ALJ who recommended reinstatement of the doctor and an award of back pay. The Secretary adopted the ALJ's findings and issued the recommended order.

Pursuant to § 5851(c)(1), the hospital sought judicial review of that order by the Court of Appeals. The doctor, who was not a party to the administrative proceeding, intervened; and, also, filed a petition to enforce the order. Although it is not entirely clear from the opinion, it appears that the Court of Appeals dismissed the doctor's petition to enforce the order on the ground that the statute required enforcement proceedings to be brought in the district court. It also dismissed the doctor as a party to the review proceeding on the ground that the doctor was not aggrieved by the Secretary's order. The court went on to reject the hospital's claim of Eleventh Amendment immunity, holding that the Eleventh Amendment bars "judicial action" not "actions brought *by* federal administrative agencies pursuant to complaints of private individuals." (emphasis added). *Marshall*, 629 F.2d at 567.

*Marshall*, and the cases cited by it, involved administrative actions brought by the agencies themselves for alleged violations of federal law which, as already noted, do not implicate the Eleventh Amendment. By contrast, the proceedings in this case all were brought directly by the individual claimants. DOL did not function as an agency seeking to enforce a law that it was charged with administering by taking action against what it perceived to be a violation. Rather, it served as a forum for adjudicating the claims of private parties.

In addition, *Marshall* deals only with Eleventh Amendment immunity and was decided long before *Seminole* and its progeny made it clear that sovereign immunity extends well beyond the literal language of the Eleventh Amendment and does not depend on the forum in which a claim is brought.

To summarize, the proceedings in this case are not *enforcement* actions brought *by DOL*. Rather, they are proceedings to *adjudicate* claims for relief made *by the individual defendants* in which, as a practical matter, the State is compelled to participate and which will significantly or conclusively impact determination of the State's liability. In effect, they are no different than suits against the State that, clearly, would be barred by the doctrine of sovereign immunity if brought in a court of law. State sovereign immunity is not negated merely because the claims were brought before an administrative tribunal.

### B. *Waiver*

PEER argues that Rhode Island has waived its sovereign immunity by applying for and accepting federal funds provided under various programs, including the Federal Hazardous Waste Program, and by enacting the Rhode Island Tort Claims Act, R.I.G.L.1956 § 9–31–1.

#### 1. *Participation in federal programs*

As a condition of receiving federal funds and participating in various federal programs, the State agreed to abide by federal laws prohibiting various forms of discrimination. PEER argues that by agreeing to that condition, the State waived its immunity with respect to pri-

---

**5.** 42 U.S.C. § 5851 prohibits an adverse employment action against an employee who assists in the commencement of, testifies at, or assists in any manner, a proceeding brought pursuant to chapter 73 of Title 42 of the United States Code dealing with the development of energy resources or pursuant to the Atomic Energy Act of 1954.

vate "whistleblower" suits brought under 42 U.S.C. § 6971.

■ Waivers of sovereign immunity cannot be implied but must be unequivocally expressed. *U.S. v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *Coggeshall Development Corp. v. Diamond,* 884 F.2d 1, 3 (1st Cir.1989). A state is not deemed to have waived its immunity unless the waiver is "stated by the most express language or by such overwhelming implication from the text as (will) leave no room for any other reasonable construction." *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■ A waiver may be contained in a state's agreement to accept federal funds or to participate in a federal program that makes the state's waiver a condition of payment or participation. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238 fn. 1, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) ("A State may effectuate a waiver of its constitutional immunity by ... waiving its immunity to suit in the context of a particular federal program."). *See also College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 686, 119 S.Ct. 2219, 2231, 144 L.Ed.2d 605 (1999) ("Congress may, in the exercise of its spending power, condition its grant of funds to the States upon their taking certain actions that Congress could not require them to take, and that acceptance of the funds entails an agreement to the actions ..."). However, acceptance of federal funds and/or participation in a federal program are not, by themselves, sufficient to establish a waiver. *Atascadero,* 473 U.S. at 246–47, 105 S.Ct. 3142 ("the mere receipt of federal funds cannot establish that a state has consented to suit in federal court"). *See also Edelman,* 415 U.S. at 673, 94 S.Ct. 1347 ("The mere fact that a State participates in a program through which the Federal Government provides assistance" is insufficient grounds to find waiver.).

In this case, PEER relies on the following provision that is contained in the various application and program documents that it cites:

[Applicant] will comply with all Federal statutes relating to nondiscrimination. These include but are not limited to ... any other nondiscrimination provisions in the specific statute(s) under which application for Federal assistance is being made; and ... the requirements of any other nondiscrimination statute(s) which may apply to the application ... [and further will] comply with all applicable requirements of all other Federal laws, executive orders, regulations and policies governing this program.

That provision falls far short of the express and unequivocal language required to establish a waiver. On its face, it is simply an agreement to abide by federal laws prohibiting discrimination. It does not even mention, let alone waive, the State's immunity from suit by private parties.

PEER argues that this provision cannot reasonably be construed as anything but a waiver because, otherwise, the State's agreement would be meaningless. In making that argument, PEER ignores the fact that the State's sovereign immunity does not prevent the federal government from forcing the State to comply with federal law or from punishing violations. Nor does it prevent even a private party from suing the State for alleged violations in a court of law pursuant to Rhode Island's waiver of immunity that is discussed below.

### 2. Statutory Waiver

■ Like the United States and many other states, Rhode Island has adopted a "tort claims act" that waives its sovereign immunity with respect to "tort actions" brought by private parties. That act provides:

*9–31–1 Tort liability of state.*

(a) The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the

period of limitations set forth in §§ 9–1–25, hereby be liable in all *actions of tort* in the same manner as a private individual or corporation; provided, however, that any recovery in any such action shall not exceed the monetary limitations thereof set forth in this chapter. [emphasis added]

The waiver limits the State's liability to $100,000. § 9–31–2.

■■■ Statutes purporting to waive sovereign immunity are strictly construed. *Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349. Like any other form of waiver, a statutory waiver must be "unequivocally expressed." *Id.*

The Rhode Island Supreme Court has held that § 9–31–1 waives both the State's sovereign immunity with respect to tort actions brought in Rhode Island courts and its Eleventh Amendment immunity with respect to tort actions brought in federal courts. *Laird v. Chrysler*, 460 A.2d 425, 429 (R.I.1983). *See also Della Grotta v. Rhode Island*, 781 F.2d 343 (1st Cir.1986).

Notwithstanding the State's argument to the contrary, the waiver is not limited to jury trials. *Laird*, 460 A.2d at 429. In fact, prior to enactment of § 9–31–1, when suits against the State were authorized on an *ad hoc* basis by special legislation, such legislation almost invariably specified nonjury trials. *Laird*, 460 A.2d at 428–29.

The real question is whether the waiver contained in § 9–31–1 extends to proceedings, like the ones in this case, that are brought before administrative agencies. This Court answers that question in the negative for several reasons.

First, as already noted, waivers of sovereign immunity are strictly construed. *Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349. Consequently, although a good argument can be made that a "whistleblower" suit is analogous to a "tort" action, *see, e.g., Gallagher v. Wilton Enterprises, Inc.*, 962 F.2d 120, 123 (1st Cir.1992)(many courts have characterized discrimination suits in general, and employment discrimination suits in particular, as analogous to actions in tort); *Marrapese v. State of Rhode Island*, 500 F.Supp. 1207, 1223 (1980) (finding that R.I.G.L. § 9–31–1 constitutes a waiver of Eleventh Amendment immunity for actions brought against the State pursuant to 42 U.S.C. § 1983, at least in so far as the conduct would have been tortious at common law), § 9–31–1 appears to be something less than "unequivocal expression" that the State has waived its immunity with respect to statutory "whistleblower" claims as well as common law tort actions.

Second, even assuming, *arguendo*, that "tort" claims should be construed to include "whistleblower" claims, the waiver contained in § 9–31–1 would be inapplicable to whistleblower claims brought in an administrative tribunal. Tort liability is governed by common law principles and, historically, has been adjudicated by courts of law and not by administrative tribunals. Moreover, awards of damages and other forms of relief obtainable in both tort actions and "analogous" statutory actions, ordinarily, are viewed as an exercise of judicial rather than executive power.[6] Finally, the term "action," itself, commonly is understood to refer to a matter litigated in a court of law. Therefore, it seems clear that § 9–31–1's reference to "actions in tort" was not intended as, and does not "unequivocally express" a waiver of the State's sovereign immunity with respect to claims brought by private parties before administrative tribunals.

---

**6.** There is no need for this Court to decide whether, to the extent that § 6971(b) purports to vest an administrative agency with authority to award damages and other relief to individual claimants, it violates Article III; or, whether, as the defendants argue, this provision falls within the hazy boundaries of the "public rights doctrine." Even if the public rights doctrine permits administrative agencies to award such relief against *private* employers, it does not address the fundamental issue in this case which is whether sovereign immunity bars such a proceeding against a state.

## II. Irreparable Harm and Balancing the Equities

Generally, the violation of a constitutional right, by itself, is deemed to cause irreparable harm. *Jolly v. Coughlin,* 76 F.3d 468, 482 (2nd Cir.1996) ("presumption of irreparable injury ... flows from a violation of constitutional rights"). Sovereign immunity and Eleventh Amendment immunity are rights of constitutional dimension. Furthermore, like other forms of immunity, they protect states not only from liability for money judgments; but, also, from being required to appear and defend itself against the claims of private parties. *See Seminole,* 517 U.S. at 58, 116 S.Ct. 1114. Since that immunity is violated when a state is made a defendant in a prohibited action, the State, in this case, has demonstrated that it is suffering and will continue to suffer irreparable harm, if a preliminary injunction is not granted.

That harm outweighs any hardship that may be imposed on the defendants if the preliminary injunction is granted. If the claimants eventually prevail in this case, interest on any amounts awarded by DOL would compensate them for the delay in recovering those amounts. In addition, they are free to pursue their claims in state court pursuant to the Rhode Island whistleblower statute R.I.G.L. § 28–50–1– 9. Indeed, it appears that such an action by Migliore may be pending.

## III. The Public Interest

As most cases of this nature, there is no clearly definable public interest that points in either direction. There is a strong public interest in preventing retaliation against those who report illegal or improper conduct and in ensuring that "whistleblowers" have a means to obtain redress for such retaliation. On the other hand, there is an equally strong public interest in ensuring that the constitutional principles underlying our federal system are not violated in the process.

Since these considerations counterbalance one another, the public interest does not weigh in favor of or against injunctive relief.

### Conclusion.

In this case it is very likely that the State, ultimately, will prevail on the merits of its claim. Moreover, the irreparable harm that it will suffer if injunctive relief is not granted, far outweighs any hardship that an injunction might impose on the defendants. Those factors, together, warrant issuance of a preliminary injunction against any further prosecution before the DOL of the individual defendants' claims against the State. However, they do not warrant enjoining OSHA from investigating the alleged violations on which those claims are based or seeking to enforce the State's compliance with federal law.

IT IS SO ORDERED,