State of **RHODE ISLAND**, et al.

v.

**UNITED STATES of America**, et al.

No. 00–44–T.

United States District Court,
D. Rhode Island.

Jan. 29, 2004.

James R. Lee, Attorney General's Office, Alan M. Shoer, Deborah Ann George, Providence, RI, for plaintiffs.

Anthony C. DiGioia, U.S. Attorney's Office, Providence, RI, Sandra M. Schraibman, Mark T. Quinlivan, Ruth Ann Weidel, Daniel P. Meyer, Washington, DC, Joel D. Landry, Providence, RI, for defendants.

### MEMORANDUM AND ORDER

TORRES, Chief Judge.

The State of Rhode Island and the Rhode Island Department of Environmental Management (collectively "the State") have moved to enforce this Court's order of September 29, 2000, which enjoined proceedings before the Department of Labor (the "DOL") brought by the individual defendants against the State. The State also seeks to enjoin the Assistant Secretary of Labor for the Occupational Safety and Health Administration ("OSHA") from intervening in one of those proceedings. For reasons hereinafter stated, the State's motion is granted in part and denied in part.

### Background

The relevant facts are set forth in this Court's Memorandum and Order of September 29, 2000 (the "2000 Order"), which enjoined further prosecution before the DOL of the individual defendants' claims against the State, *Rhode Island v. United States*, 115 F.Supp.2d 269 (D.R.I.2000), and in the First Circuit's decision, which modified that order to allow the Secretary of Labor to intervene in the proceedings but affirmed the injunction in all other respects, *Rhode Island Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31 (1st Cir.2002). For present purposes the facts may be summarized as follows.

Beverly Migliore, Barbara Raddatz, and Joan Taylor (collectively, the "individual defendants" or "claimants") are DEM employees. Through counsel, they filed complaints with DOL alleging that the Department of Environmental Management ("DEM") violated the "whistle blower protection" provision of the Solid Waste Disposal Act (the "SWDA"), 42 U.S.C. § 6971, *et seq.*, by retaliating against them for reporting DEM's alleged failure to comply with the SWDA. Migliore filed three complaints. The first two were consolidated (Migliore I) and the third proceeded separately (Migliore II).

Each complainant sought injunctive relief, compensatory damages for mental anguish and an award of attorneys' fees. Migliore also sought damages for loss of professional reputation.

When the 2000 Order was entered, the claims were at different stages in the administrative process. Taylor's case was still under investigation by the Assistant Secretary. Raddatz's claim had been investigated and the Assistant Secretary had found no violation. The claims in Migliore II had been investigated and the Assistant Secretary had awarded Migliore $10,000. In Migliore I, the Assistant Secretary found no violation but that finding was appealed to an Administrative Law Judge ("ALJ") who awarded Migliore $843,000, which included $400,000 for emotional distress, impairment of health, and loss of professional reputation. When this action was commenced, the State's appeal in Migliore I was pending before the DOL's Administrative Review Board (the "ARB").

This Court found that the proceeding in Migliore I was, in effect, a suit for damages by Migliore and not an enforcement action by the DOL. Accordingly, this Court held that the proceeding was barred by

the doctrine of sovereign immunity. *Rhode Island,* 115 F.Supp.2d at 276.

This Court did not disturb the $10,000 award made in Migliore II; and, in enjoining "any further prosecution before the DOL of the individual defendants' claims against the State," this Court was careful to state that it was *not* "enjoining OSHA from investigating the alleged violations on which those claims are based or seeking to enforce the State's compliance with federal law." *Id.* at 279. On the contrary, the injunction was based on the finding that these proceedings, and Migliore I in particular, were in essence, "private tort action[s], not . . . administrative enforcement proceeding[s]," *id.* at 275. Specifically, with respect to Migliore I, this Court noted that the case was prosecuted by Migliore's counsel; that the Secretary had found no violation; that the Secretary did not participate in the 23–day evidentiary hearing before the ALJ; that the Secretary expressly informed the parties that the DOL did not represent them in any hearing before the ALJ; and that the ALJ made a substantial award of compensatory damages for mental anguish, physical injury and harm to reputation. *Id.* at 275.

On appeal, the defendants argued that "the state ha[d] no claim to sovereign immunity in the privately prosecuted administrative proceedings at issue here." *Rhode Island,* 304 F.3d at 45. The Court of Appeals rejected that argument based on the Supreme Court's decision in *Federal Maritime Commission v. South Carolina State Ports Authority,* 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002). The Court of Appeals stated: "We think this decision fairly disposes of any argument by the appellants that, as a general proposition, a state's traditional immunity from suit does not extend to administrative proceedings initiated and prosecuted by private citizens." *Rhode Island,* 304 F.3d at 45.

The Court of Appeals observed that the proceeding before the ALJ in Migliore I was "not directed or prosecuted by the Secretary" and it described the administrative adjudication as one in which "the individual complainant tries a case against the employer, and the Secretary (through the ALJ) acts as the neutral arbiter of law and fact." *Id.* at 53. The Court of Appeals also pointed out that "the ARB reviews the decision of the ALJ only for the limited purpose of determining whether a violation of law occurred." *Id.* However, the Court of Appeals went on to make the following statement which is at the root of the current dispute between the parties:

> We pause, however, to make one important observation. The governing regulations provide that the Secretary may, at any time, intervene in the proceedings *before the ALJ* as a party or amicus. 29 C.F.R. § 24.6(f)(1). Generally speaking, if the United States joins a suit after it has been initiated by otherwise-barred private parties and seeks the same relief as the private parties, this generally cures any Eleventh Amendment or sovereign immunity defect, and the private parties may continue to participate in the suit. *See Mille Lacs Band of Chippewa Indians v. Minnesota,* 124 F.3d 904, 913 (8th Cir.1997), *aff'd.* 526 U.S. 172, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999); *Seneca Nation of Indians v. New York,* 178 F.3d 95, 97 (2nd Cir. 1999) (per curiam). Thus, our holding does not preclude the Secretary from intervening in the *enjoined proceedings* and removing the sovereign immunity bar. *See Ohio Envtl. Prot. Agency,* 121 F.Supp.2d at 1167. To the extent the district court's injunction does not permit the Secretary to take such action, we modify the injunction accordingly.

*Id.* at 53–54 (first emphasis added).

The Court of Appeals concluded by saying:

The order of the district court enjoining the administrative proceedings before the Department of Labor is **modified** to allow the Secretary of Labor, if she so chooses, to intervene in the proceedings *before the ALJ*, thereby curing any sovereign immunity bar. In all other respects, the district court's order is **affirmed.**

*Id.* at 55 (underlined emphasis added).

The State argues that this language should be read to mean that the Secretary's intervention removes the sovereign immunity bar only if intervention occurs at or before the ALJ stage of the proceeding. The defendants, on the other hand, argue that the term "enjoined proceedings" includes Migliore I and that the quoted language should be read to mean that intervention, even at the ARB stage, cures any sovereign immunity violation that occurred at the ALJ stage.

### Analysis

■ There are several reasons why this Court is persuaded that the State's interpretation of the Court of Appeals' decision is correct and why the Secretary's intervention before the ARB cannot retroactively cure what, otherwise was a sovereign immunity violation that occurred at the ALJ stage.

First, in discussing the Secretary's right to intervene, the Court of Appeals referred to a regulation which it described as allowing intervention in "proceedings *before the ALJ*." *Rhode Island,* 304 F.3d at 53 (citing 29 C.F.R. § 24.6(f)(1))(emphasis added). Furthermore, the Court of Appeals stated that intervention would eliminate the sovereign immunity bar if it occurred "in the proceedings *before the ALJ*." *Id.* at 55 (emphasis added).

Second, in stating that the Secretary's intervention "generally" "cures" any sovereign immunity defect, the Court of Appeals cited two cases that are readily distinguishable from Migliore I because both cases involved lawsuits brought in federal courts where the United States intervened at the *trial* stage. *Id.* at 53 (citing *Mille Lacs Band of Chippewa Indians v. Minnesota,* 124 F.3d 904 (8th Cir.1997), *aff'd,* 526 U.S. 172, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999); *Seneca Nation of Indians v. New York,* 26 F.Supp.2d 555 (W.D.N.Y.1998)).

The defendants' reliance on *Ohio Environmental Protection Agency v. United States Department of Labor,* 121 F.Supp.2d 1155 (S.D.Ohio 2000), another case cited, in passing, by the Court of Appeals, is misplaced. That case, too, is readily distinguishable from this case because, although it allowed a claim against the State of Ohio to proceed when the Secretary intervened at the ARB stage, it did so only because, unlike this case, the State had not raised the sovereign immunity defense until then. *Ohio EPA,* 121 F.Supp.2d at 1166. Indeed, the court in *Ohio EPA* stated that a regulation purporting to allow a private party to prosecute a claim against a state before an ALJ "passes constitutional muster only if the Department of Labor itself elects to join the action *at the time the case is referred to the Office of Administrative Law Judges.*" *Id.* at 1166 (emphasis added).

Third, the Court of Appeals recognized that, in order for intervention by the United States to remove the sovereign immunity bar, the United States must "seek[ ] the same relief as the [otherwise barred] private parties." *Rhode Island,* 304 F.3d at 53.

In Migliore I, it is difficult to see how the Secretary could be seeking the "same relief" as the claimant. Ms. Migliore is seeking damages for mental suffering, physical injury, and harm to reputation, which bear little relationship to the type of relief associated with an action brought by the United States to enforce federal law. The "whistle blower" provision of the Solid

Waste Disposal Act authorizes the Secretary "to take such affirmative action to *abate the violation* as the Secretary ... deems appropriate." 42 U.S.C. § 6971(b)(emphasis added). It does not confer upon the Secretary carte blanche to seek an award to a private party of the kind of damages, that, historically, have been recoverable only in tort actions brought in a court of law. In fact, construing the provision in that manner would raise serious constitutional questions regarding separation of powers.

In this respect, too, Migliore I is distinguishable from the *Mille Lacs* and *Seneca* cases because, in those cases, the United States properly sought the same relief sought by the tribes, due, in part, to the nature of that relief and the unique fiduciary relationship between the federal government and Indian tribes, a relationship lacking in this case. *See Mille Lacs*, 124 F.3d at 910 (where the relief sought was affirmation of tribal rights to use and enjoy land previously ceded to the United States and enforcement of treaty rights to hunt and fish in these lands); *see also United States v. Cherokee Nation of Okla.*, 480 U.S. 700, 707, 107 S.Ct. 1487, 94 L.Ed.2d 704 (1987)("It is, of course, well established that the Government in its dealings with Indian tribal property acts in a fiduciary capacity.").

Fourth, here, the Court of Appeals specifically held that the proceeding before the ALJ in Migliore I violated the State's sovereign immunity because it was prosecuted by a private party and the Secretary did not participate in any way. *Rhode Island*, 304 F.3d at 46. That holding was based on the Court's recognition of the aforesaid distinction between a "privately-prosecuted" claim for damages and a proceeding to enforce federal law in which the Secretary participates and which "implicat[es] the exercise of political responsibility by the federal government." *Id.* at 53.

Construing the Court of Appeals' decision to mean that intervention at the ARB stage retroactively cures the violation would obliterate that distinction. Damages claims brought and prosecuted by private parties would be deemed actions by the government to enforce federal law simply because the Secretary intervenes after all the evidence has been presented.

■ Fifth, construing the Court of Appeals' decision in this way, effectively, would gut the doctrine of sovereign immunity. Sovereign immunity has two components. It protects states from liability for claims asserted by private individuals and it protects them from the burdens and "the indignity" of being subjected "to the coercive process of judicial tribunals at the instance of private parties." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)(internal citation omitted). Obviously, that protection would be lost by requiring a state to pay damages in a "tort action" brought by a private party. It also would be lost by requiring a state to appear and defend against such an action. If intervention at the ARB Stage is viewed as retroactively curing a sovereign immunity violation, the protection from suit component would be rendered meaningless. A state would be forced to appear and defend against claims that blatantly violate its immunity from suit because the state would have no way of knowing whether the Secretary might choose to intervene at some later stage in the proceeding thereby "curing" the defect.

Sixth, it is difficult to see how the Secretary's intervention before the ARB can inject the kind of "exercise of political responsibility for [a] suit prosecuted against a State" which the Supreme Court has said is a cornerstone of the distinction between an action brought by the United States and an action brought by a private

individual. *Alden v. Maine,* 527 U.S. 706, 756, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). The Assistant Secretary found no merit to the claim in Migliore I but the matter, nevertheless, was prosecuted by Migliore's counsel. Furthermore, at this point, the Secretary's ability to exercise political responsibility in Migliore I is restrained by limitations on the scope of review by the ARB. In ruling on the pending appeal, the ARB would be looking at a record compiled before the ALJ and, although the ARB is not bound by the ALJ's findings, it must give some deference to the ALJ's judgments regarding credibility of witnesses. *See Hobby v. Georgia Power Co.,* ARB No. 98–166, 2001 WL 487726, at *1 (ARB Apr. 20, 2001)("[A]n ALJ's demeanor-based credibility findings are entitled to great deference.").

Finally, the defendants cite no authority for the novel proposition that the violation of a constitutional right can be retroactively cured after the violation has occurred and much of the damage has been done. Here, as the Court of Appeals implicitly recognized, the State's sovereign immunity was violated when it was required to defend Migliore I in the proceedings before the ALJ brought by Migliore, herself. The violation was compounded by the nature of the ALJ's award and the fact that the proceedings before the ALJ establish the framework within which the ARB's decision would be made. An eleventh-hour intervention by the Secretary after the violations have been committed and the die has been cast cannot negate the violations or eradicate their effects. If the proceeding before the ALJ is to be characterized as one by the Secretary to enforce federal law, it must have been brought as such.

### Conclusion

For all of the foregoing reasons, this Court finds that, when the disputed portions of the Court of Appeals' decision are read in context and in light of the principles underlying the doctrine of sovereign immunity, they must be construed to mean that intervention by the Secretary removes the sovereign immunity bar only if it occurs at or before the ALJ stage. Intervention at the ARB stage is too little and too late.

Accordingly, the State's motion to enforce the 2000 Order enjoining any further proceedings before the ARB in Migliore I is granted. To the extent that the motion seeks to enjoin the Secretary from intervening at or before the ALJ stage in any of the other proceedings, the motion is denied.

IT IS SO ORDERED.